# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**RAYMOND R. ROSEBORO**,

      **Petitioner,**

**v.**                               **Case No.: 2:17-cv-02055**

**WARDEN,**
**USP ATWATER**[1]

      **Respondent.**


### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF Nos. 1, 3), and Respondent's Motion to Dismiss, (ECF No. 13). This case is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the District Court

---

[1] Petitioner was incarcerated at Federal Correctional Institution McDowell, ("FCI McDowell"), in Welch, West Virginia when he filed the instant petition, and he correctly named as Respondent Barbara Rickard, the warden at that facility. Petitioner was subsequently transferred to the United States Penitentiary Yazoo ("USP Yazoo") in Yazoo City, Mississippi. *See* (ECF No. 13 at 1 n.1). Petitioner has since been transferred to the United States Penitentiary Atwater ("USP Atwater") in Atwater, California. *See* Bureau of Prisons ("BOP") inmate locator at www.bop.gov/inmateloc/. Pursuant to Federal Rule of Civil Procedure 25(d), the warden of USP Atwater will be substituted as Respondent in this case. Although Petitioner is no longer in custody in the Southern District of West Virginia, this Court retains jurisdiction over the matter. "Jurisdiction is determined at the time an action is filed; subsequent transfers of prisoners outside the jurisdiction in which they filed actions do not defeat personal jurisdiction." *United States v. Edwards*, 27 F.3d 564 (4th Cir. 1994) (citing *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990)).

**TRANSFER** Petitioner's petition to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a), and **DISMISS** this action from the docket of the Court. The undersigned further **RECOMMENDS** that the District Court **DENY** Respondent's Motion to Dismiss, (ECF No. 13), as **MOOT**.

## I.    <u>Relevant Background</u>

On September 7, 2011, Petitioner Raymond Roseboro ("Roseboro") was charged in an indictment, filed in the Superior Court for the District of Columbia, with Murder in the First Degree; Possession of a Firearm During a Crime of Violence or Dangerous Offense; Carrying a Pistol Without a License; and Possession of Unregistered Ammunition. (ECF No. 3 at 4). Roseboro's first trial on these charges began on February 12, 2012, in the Superior Court for the District of Columbia, and ended in a mistrial on February 26, 2012 when the jury was unable to reach a verdict. (*Id.*). A second trial started on September 11, 2012 and resulted in a mistrial on September 25, 2012, as the jury again failed to agree on a verdict. (*Id.*).

Roseboro's third trial began on January 24, 2013. (*Id.*). The State presented testimony by two witnesses, who linked Roseboro to the murder of the victim, Prince Okorie, while Roseboro asserted an alibi defense. (*Id.* at 4-5). On the third day of a ten-day trial, Roseboro's counsel approached the trial judge with a concern about a sleeping juror. (*Id.* at 6-7). Roseboro's counsel initiated the following discussion:

DEFENSE ATTY: He nods off and sleeps alot.

THE COURT: Really? Did you notice that?

PROSECUTOR: I had noticed that--first of all, he seems to be startled. I haven't noticed him sleeping for long stretches of time. I have noticed it a couple of times.

DEFENSE ATTY: The only time we really had his full attention is when the

> trial first started and when we presented the autopsy photos. That's when he really kind of—
>
> THE COURT: Now that I think about it, there were some times where I was wondering. Sometimes it's a little hard to tell from here if he was actually sleeping. Some people do close their eyes as they listen. So I will definitely focus in, since both of you have seen more than I have. And it's not going to help anyone 's cause if we allow him on. So, we can talk about that later.

(ECF No. 3-1 at 6-7). Later that day, trial counsel raised the issue again, noting that the juror in question had also passed a note to another juror as well as writing something down on a notepad and showing it to the juror seated behind him. (*Id.* at 7). The prosecutor agreed, saying, "during my direct of the firearm examiner ... he was nodding off a couple of times." (*Id.*). The trial judge noted that the juror had "nodded off at different points as well, so we will keep an eye on him." (*Id.*).

The trial judge believed that the juror should be made an alternate juror, but defense counsel requested a hearing to determine if the juror should be permitted to continue at all. (ECF No. 3 at 7). In lieu of holding a hearing on the matter, the trial judge elected to continue "monitoring" the situation. (*Id.*). The trial judge indicated that "[r]ight now, I'm inclined to exclude him, not take him off the jury, but just to switch him." (*Id.*). Defense counsel suggested that the judge question the juror at the end of the day, but defense counsel did not later pursue that request. (ECF NO. 3-1 at 4). The prosecutor, defense counsel, and trial judge apparently all agreed at the close of trial that there had been no further issues with the juror sleeping. (*Id.* at 8). Roseboro states that his defense counsel "inexplicably" did not renew his request for a hearing at the end of the trial and did not question the juror's ability to deliberate. (ECF No. 3 at 8).

On February 6, 2013, after deliberating for four hours and fifty-five minutes, the jury found Roseboro guilty of all counts contained in the indictment. (*Id.* at 6). On April

10, 2013, Roseboro was sentenced to 40 years imprisonment, 5 years of supervised release, and ordered to pay a fine of $400. (*Id.*). Roseboro filed a notice of appeal on April 18, 2013 and was later appointed counsel to assist with his appeal. (*Id.* at 6, 8).

Roseboro communicated to his appellate attorney that he felt he was not adequately represented by his trial counsel and asserts that his appellate counsel ignored his requests to raise this defense on appeal. (ECF Nos. 3 at 8, 3-1 at 2). Roseboro includes a July 15, 2013 letter he received from his appellate counsel, which acknowledges Roseboro's proposed grounds of ineffective assistance of trial counsel for "(1) failure to strike testimony of witness who twice left court room; (2) failure strike juror who was sleeping; and (3) failure to strike juror who was passing notes with another juror." (ECF No. 3-1 at 3). Roseboro's appellate counsel informed Roseboro he would "look for this when I read the transcripts." (*Id.*).

Roseboro's appellate counsel filed Roseboro's appeal on September 18, 2014. (ECF No. 3 at 6). The appellate brief apparently raised a single issue, arguing that the trial judge's failure to take appropriate action regarding the sleeping juror was an abuse of discretion and resulted in a violation of Roseboro's right to a trial by jury. (*Id.*). The government argued in rebuttal that the matter had been waived by Roseboro's trial counsel. (*Id.*).

In a terse opinion issued on May 29, 2015, the District of Columbia Court of Appeals ("DCCA") rejected Roseboro's appeal. (ECF No. 3-1 at 4). The DCCA found that by "expressly declining to object to the sleeping juror or to request the judge to undertake further inquiry or other action, [Roseboro] waived any claim that the judge erred in failing to respond appropriately to the situation." (*Id.* at 4-5). Furthermore, in "the absence of an objection at trial" Roseboro could not demonstrate "any likelihood that he was prejudiced

4

by the judge's failure to take further action on the sleeping juror report." (*Id.* at 5).

Roseboro then filed a Motion to Recall the Mandate in the DCCA, arguing that his appellate attorney provided ineffective assistance of counsel by failing to raise the issue of ineffective assistance of trial counsel on direct appeal. (ECF No. 3-1 at 6). On October 19, 2016, the DCCA rejected Roseboro's Motion. (*Id.* at 16). In its entirety, the DCCA Order consisted of a one-sentence denial of the Motion followed by a case citation, as stated below:

> On consideration of appellant's motion to recall the mandate, it is ORDERED that appellant's motion to recall the mandate is denied. *See Watson v. United States*, 536 A.2d 1056, 1060-61 (D.C. 1987) (*en banc*) (providing that the appellant carries the heavy burden of setting forth in detail, "chapter and verse," a persuasive, factually based argument for recalling the mandate).

(ECF No. 3-1 at 16). Roseboro filed the instant § 2254 petition in March 2017. (ECF No. 1). In the petition, Roseboro argues that the DCCA's decision to deny his Motion to Recall the Mandate was contrary to, or involved an unreasonable application of, federal law. (ECF No. 3 at 1). Roseboro argues that his claim is appropriately before this Court as persons convicted in the District of Columbia may raise ineffective assistance of appellate counsel claims under § 2254. (*Id.* at 2-3). Roseboro contends that his appellate counsel was clearly ineffective in failing to pursue claims of ineffective assistance of trial counsel on appeal as requested by Roseboro. (*Id.* at 10). Roseboro states that prejudice resulting from this failure is also readily apparent as his two prior trials had resulted in hung juries, raising the inference that the government's case was weak and the undivided attention of all twelve jurors was vital. (*Id.* at 12-13). Roseboro argues the DCCA therefore unreasonably applied the standard for judging ineffective assistance of counsel established in *Strickland v. Washington,* 466 U.S. 668 (1984), and its decision should be

overturned. (*Id.* at 14). Roseboro asks this Court to vacate his convictions from the Superior Court of the District of Columbia, or, alternatively, to remand his case back to the "Appellate Court for further investigation" of the issue. (*Id.*).

Respondent filed a Motion to Dismiss on November 9, 2018. (ECF No. 13). In the Motion, Respondent does not argue that Roseboro's claim is unexhausted, untimely, or improperly before this Court. Respondent instead contends only that the DCCA's decision rejecting Roseboro's Motion to Recall was reasonable and should not be disturbed under the standard of review established by § 2254. (*Id.* at 4). Respondent asserts that, while the DCCA's decision was brief, the DCCA's citation to *Watson* reveals that the decision was "grounded" in that case, which did apply the *Strickland* standard, and thus the DCCA applied the *Strickland* standard to Roseboro's claim as required by federal law. (*Id.* at 7-8).

Respondent additionally argues that Roseboro has not established that his appellate counsel was constitutionally deficient. (*Id.* at 8). Respondent notes that Roseboro's trial counsel chose to pursue the issue of error on the part of the trial judge. (*Id.* at 9). Respondent believes that, based on the excerpts of the trial transcript provided by Roseboro, "it is reasonable to assume that [Roseboro's] appellate counsel used his professional judgment in deciding which claim to pursue." (*Id.*). As the record does not show that Roseboro's appellate counsel made grave constitutional errors, Respondent contends, Roseboro cannot show his appellate counsel was constitutionally deficient. (*Id.*). Finally, Respondent argues that Roseboro cannot establish that he was prejudiced by his appellate counsel's alleged errors. (ECF No. 13 at 9-10). Respondent asks this Court to dismiss Roseboro's § 2254 petition. (*Id.* at 11).

## II.   <u>**Standard of Review**</u>

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, authorizes a federal district court to entertain a petition for habeas corpus relief from a prisoner in State custody, "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When determining the merits of a § 2254 petition, the district court applies the standard set forth in § 2254(d), which provides that the habeas petition of a person in State custody "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim" is:

(1) contrary to, or involves an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1)−(2). Moreover, the factual determinations made by the state court are presumed to be correct and are only rebutted upon presentation of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Thus, when reviewing a petition for habeas relief, the federal court uses a "highly deferential lens." *DeCastro v. Branker*, 642 F.3d 442, 449 (4th Cir. 2011).

A claim is generally considered to have been "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." *Thomas v. Davis*, 192 F.3d 445, 455 (4th Cir. 1999). The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have separate and independent meanings. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court

decision warrants habeas relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's." *Lewis v. Wheeler*, 609 F.3d 291, 300 (4th Cir. 2010) (quoting *Williams*, 529 U.S. at 405) (internal quotations omitted). The district court may grant a habeas writ under the "unreasonable application" clause if the state court "identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular case." *Id.* at 300–01 (internal marks omitted).

Accordingly, the AEDPA limits the federal habeas court's scope of review to the reasonableness, rather than the correctness, of the state court's decision. A federal court may not issue a writ under this standard "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 365.

Here, Respondent asks this court to dismiss Roseboro's petition. Respondent does not state under which rule the motion to dismiss is brought, however, given the stage in the proceedings, and the nature of the arguments presented, it is best understood as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). When deciding a motion for dismissal under Rule 12(b)(6), the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nevertheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or

arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'"
*Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir.
2006)). A court presented with a motion for judgment on the pleadings in a section 2254
case must consider "the face of the petition and any attached exhibits." *Walker v. Kelly,*
589 F.3d 127, 139 (4th Cir. 2009) (quoting *Wolfe*, 565 F.3d at 169). In addition, the court
may consider "matters of public record," including documents from prior or pending
court proceedings, when resolving the motion without converting it into a motion for
summary judgment. *Id.*

### III.  **Discussion**

#### A.  *The Effect of D.C. Code § 23-110 on Jurisdiction*

A person in custody pursuant to a state court judgment may collaterally attack his
conviction or sentence under 28 U.S.C. § 2254. A person who is in custody pursuant to a
federal court judgment may collaterally attack his conviction or sentence under 28 U.S.C.
§ 2255, and may attack the execution of his sentence under 28 U.S.C. § 2241. Roseboro,
however, presents an unusual situation in that he was convicted in the District of
Columbia. The District of Columbia is not a state, but a federal district governed by
Congress. Rather than employing the ordinary avenue for federal habeas relief as codified
in § 2255 and § 2241, Congress has established a bifurcated local and federal jurisdictional
scheme for persons convicted of crimes in the District of Columbia. *See Craig v. Snyder,*
No. 5:09-HC-2051-BO, 2011 WL 1134593, at *2 (E.D.N.C. Mar. 28, 2011).

In 1970, Congress enacted the District of Columbia Court Reform and Criminal
Procedure Act, 84 Stat. 473, which transferred general jurisdiction of local criminal
convictions from the federal courts located in that district to the local courts. *See Swain
v. Pressley,* 430 U.S. 372, 375 n.4 (1977) (discussing background of the Act); *see also*

*Palmore v. United States,* 411 U.S. 389, 392 n.2 (1973) (same). The current local court system in the District of Columbia is "analogous to those found in the States." *Swain,* 411 U.S. at 375 n.4. Under the Act, the Superior Court of the District of Columbia has general jurisdiction over local matters, and the DCCA, the highest court in the district, has appellate jurisdiction. *Id.*

Relevant to the instant petition, as part of the 1970 legislation, Congress established an independent procedure for collateral review of convictions imposed by the Superior Court of the District of Columbia that mirrors that authorized by 28 U.S.C. § 2255 for the United States district courts. D.C. Code § 23-110 provides, in relevant part, as follows:

> (a) A prisoner in custody under sentence of the Superior Court claiming the right to be released upon the ground that (1) the sentence was imposed in violation of the Constitution of the United States or the laws of the District of Columbia, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, (4) the sentence is otherwise subject to collateral attack, may move the court to vacate, set aside, or correct the sentence.
> ...
> (g) An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section shall not be entertained by the Superior Court or by any Federal or State court if it appears that the applicant has failed to make a motion for relief under this section or that the Superior Court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

D.C. Code § 23-110. Thus, although the District of Columbia court system may be functionally similar to state court procedures, persons convicted in the District of Columbia are more restricted in their ability to obtain federal habeas relief. While a state prisoner may, as a matter of course, request federal habeas relief after he has exhausted available state remedies, a District of Columbia prisoner can do so only if he is able to show that the remedy available under 23-110 is "inadequate or ineffective to test the

10

legality of his detention" as required by § 23-110(g). *See e.g. Garris v. Lindsay*, 794 F.2d 722, 726 (D.C. Cir. 1986).

The fact that the local District of Columbia courts have declined to grant relief under the section 23-110 remedy is not enough to show that the remedy was inadequate or ineffective. *See Craig*, No. 5:09-HC-2051-BO, 2011 WL 1134593, at *3; *see also Garris,* 794 F.2d at 726-727. The Court Reform Act of 1970 provided that "to the extent that a remedy under D.C. Code § 23–110 [is] available, it [is] an exclusive one." *Smith v. Williams*, No. 5:15-CV-26, 2015 WL 3850206, at *8 (N.D.W. Va. June 22, 2015) (internal markings and emphasis omitted) (quoting *Blair–Bey v. Quick,* 151 F.3d 1036,1042 (D.C. Cir.1998)). Consequently, "the Court Reform Act entirely divested the federal courts of jurisdiction to hear habeas corpus petitions by prisoners who had a section 23–110 remedy available to them, unless the petitioner could show that the section 23–110 remedy was 'inadequate or ineffective.'" *Id.*[2]

The Circuit Court for the District of Columbia has recognized that the claim Roseboro is raising, ineffective assistance of appellate counsel, is not subject to § 23-110(g)'s jurisdiction stripping scheme. *See Williams v. Martinez*, 586 F.3d 995, 998 (D.C. Cir. 2009). This is because under the procedural rules of the District of Columbia, the issue of ineffective assistance of appellate counsel cannot be raised in a section 23-110 motion. Instead, the issue may only be litigated in a Motion to Recall the Mandate. *See id.* at 997; *see also Watson v. United States*, 536 A.2d 1056, 1060 (D.C. 1987) (*en banc*).

The District of Columbia Circuit Court found that, as the issue could not be raised

---

[2] The Supreme Court has consistently upheld section 23–110(g)'s jurisdiction stripping scheme against claims that the statute violates the Suspension Clause, Art. I, § 9, cl. 2, of the Constitution. *See Swain*, 430 U.S. 372, 381 (1977) ("[t]he substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus.").

under § 23-110, but instead must be raised through a separate procedure, the available remedy under section 23-110 was indeed "inadequate or ineffective" for these claims. *Williams*, 586 F.3d at 998. The *Williams* Court rejected the Government's argument that "the proper inquiry is not whether section 23-110 provides an adequate remedy to test the legality of [the petitioner's] detention, but rather whether the 'local remedy' taken as a whole does." *Id.* In making this determination, the *Williams* Court recognized that prisoners "who challenge the effectiveness of appellate counsel through a motion to recall the mandate in the D.C. Court of Appeals will get a second bite at the apple in federal court." *Id.* at 1000. Noting that local courts in the District of Columbia are generally treated as state courts for the purpose of federal habeas review, the *Williams* Court remanded the case to the District Court with instructions to consider the petitioner's claims "in light of the standard set forth in 28 U.S.C. § 2254." *Id.* at 1002.

Respondent does not argue that the decision in *Williams* does not apply here and instead argues Roseboro's claims on the merits. (ECF No. 13 at 5-6). While the undersigned recognizes that decisions by the Circuit Court of the District of Columbia do not represent controlling precedent, the reasoning employed by the *Williams* Court in reaching its decision is compelling. By its terms, § 23-110(g)'s exclusivity command applies only when an applicant for federal habeas relief was "authorized to apply for relief by motion *pursuant to this section*." D.C. Code § 23-110(g) (emphasis added). As Roseboro was not authorized to raise his ineffective assistance of appellate counsel claim pursuant to § 23-110, but was instead required to litigate the claim via a separate procedural mechanism, the remedy under § 23-110 was "inadequate" as to that claim. The undersigned thus **FINDS** that Roseboro's claim is not barred by § 23-110(g)'s exclusivity requirement.

As Roseboro is raising a claim which evades the exclusivity rules imposed by § 23-110(g), it would appear that analysis of his § 2254 petition could proceed to the merits. However, as a federal prisoner convicted in the District of Columbia and subject to the vagaries of BOP placement, Roseboro's task of navigating the already complex federal habeas statutory scheme in order to successfully raise his claim for relief becomes even more Byzantine. Roseboro has not filed his § 2254 petition in the District of Columbia where he was convicted, but in this Court while he was temporarily incarcerated within its jurisdiction. Lower courts considering similar claims for relief raised by federal prisoners convicted in the District of Columbia have not provided a model of clarity or consistency in their approach.

District courts have not reached agreement on whether a person convicted in the District of Columbia, and incarcerated within a jurisdiction outside of that District, should bring a claim collaterally attacking those convictions under § 2241, or instead under § 2254 as most state prisoners must. Indeed, federal courts do not even agree on whether a District of Columbia prisoner in federal custody should be considered a "state" prisoner at all. *Compare Briscoe v. Withers*, No. CIV.A. 6:12-213-DCR, 2012 WL 5198470, at *1 (E.D. Ky. Oct. 19, 2012) ("However, a prisoner in federal custody pursuant to a judgment of the D.C. Superior Court "cannot seek relief pursuant to Section 2254. Instead, 28 U.S.C. § 2241 provides the only federal court remedy available to a prisoner convicted under the District of Columbia Code.") (quoting *Ford v. Rios*, No. 08–196–ART, 2009 WL 511136, at *3 (E.D.Ky. Mar.2, 2009)); *Boling v. Superior Court of D.C.,* No. CA 1:12-CV-01576 DDC, 2012 WL 6761508, at *3 (D.S.C. Nov. 29, 2012) ("Section 2254 is not available to persons convicted in the Superior Court for the District of Columbia because the District of Columbia is not a State."); *Butler v. Huibregtse*, No. 10-CV-0128-BBC, 2010 WL

1288729, at *1 n.1 (W.D. Wis. Mar. 26, 2010) (questioning whether petition brought under § 2254 should have instead been brought under § 2241, but declining to reach merits); *Jackson v. Rios*, No. CIV.A.7:08-CV-114KKC, 2008 WL 3154617, at *2 (E.D. Ky. Aug. 5, 2008) ("Since prisoners sentenced in the Superior Court are not considered 'state' offenders or prisoners in state custody, they may not seek federal habeas corpus relief under 28 U.S.C. § 2254."); *with Boling v. Warden (F.C.I.) Estill*, No. CV 4:16-3227-CMC-TER, 2016 WL 11410311, at *2 (D.S.C. Nov. 15, 2016), *affirmed, Boling v. Warden FCI Estill*, 691 F. App'x 118 (4th Cir. 2017) (finding District of Columbia prisoners are state prisoners for § 2254 purposes); *Davis v. Coakley,* No. 2:17-CV-120, 2017 WL 9565834, at *2 (N.D.W. Va. Oct. 17, 2017), *report and recommendation adopted*, No. 2:17-CV-120, 2017 WL 6381698 (N.D.W. Va. Dec. 14, 2017) ("It is well-established that for purposes of federal habeas law, convictions in the District of Columbia Superior Court for offenses under the D.C. Criminal Code, are considered "state" convictions."); *Williams v. Martinez*, No. 4:CV-08-1053, 2008 WL 2310834, at *1 (M.D. Pa. June 3, 2008) ("Although [p]etitioner filed this action in part pursuant to § 2241, District of Columbia offenders are considered state prisoners for purposes of the federal habeas corpus statutes. As a state prisoner, [petitioner] must solely rely on 28 U.S.C. § 2254 to bring claims challenging the validity or the execution of his District of Columbia sentence.") (internal citations omitted); *Nash v. Wendt*, No. CIV.A. 5:05-CV-204, 2008 WL 4646336, at *2 (N.D.W. Va. Oct. 16, 2008) (finding § 2254 appropriately applied to claims of prisoner convicted in the District of Columbia); *Smith v. McGrew*, No. CV 13-245-MMM SP, 2013 WL 6002904, at *1 (C.D. Cal. Nov. 6, 2013) (same).

Respondent does not challenge Roseboro's ability to raise his claim in a § 2254 petition and instead argues only the merits of his claim. However, as the issue is

jurisdictional, the undersigned must consider whether this Court has jurisdiction to consider Roseboro's petition and, if so, whether it should be considered under § 2254, or § 2241. While lower courts have divided over the issue, it appears that courts in this circuit have generally held that § 2254 is the appropriate mechanism when a District of Columbia prisoner attempts to contest the validity of his conviction. *See Boling,* No. CV 4:16-3227-CMC-TER, 2016 WL 11410311, at *2; *Davis,* No. 2:17-CV-120, 2017 WL 9565834, at *2; *Nash,* No. CIV.A. 5:05-CV-204, 2008 WL 4646336, at *2. Additionally, this Court, while not directly addressing the issue, has indicated it endorses the view that District of Columbia prisoners should be viewed as state prisoners for the purpose of § 2254.

This Court was asked to consider the issue in the context of a § 2241 petition brought by a prisoner convicted in the District of Columbia who challenged a decision by the United States Parole Commission denying him parole. *See Allen v. O'Brien*, No. 1:14-CV-02545, 2015 WL 4621453, at *4 (S.D.W. Va. June 22, 2015), *report and recommendation adopted*, No. CIV.A. 1:14-02545, 2015 WL 4624619 (S.D.W. Va. July 31, 2015). This Court first noted that generally, "D.C. Code offenders, like [petitioner], are considered to be state prisoners, rather than federal prisoners, even though they may be incarcerated in a federal prison." *Id.* at *5. As such, this Court questioned whether the petitioner should be able to proceed under § 2241 due to his status as a state court prisoner, but ultimately allowed the petitioner to proceed as he was challenging the execution of his sentence, and the factual basis for his challenge had only recently become available to him. *Id.* at *6-7.

Moreover, treating persons convicted in District of Columbia local courts as state prisoners for the purposes of federal habeas relief seems the most logical approach. The Supreme Court has noted that the system of local courts in the District of Columbia is

"analogous to those found in the States." *Swain,* 411 U.S. at 375 n.4. Forcing a prisoner convicted in the District of Columbia who manages to raise a claim that evades the general bar on federal review imposed by § 23-110(g), to raise that claim under § 2241 makes little sense as that statute is generally utilized to attack the execution of a federal sentence, not the validity of a state court conviction. Here, Roseboro is unequivocally attacking the validity of his "state" court conviction and not the execution of his sentence. To the extent that he has raised a claim that may be heard in federal court, it seems most appropriate to consider that claim under § 2254. The undersigned thus **FINDS** that Roseboro's petition is properly brought under § 2254, and that the decision by the DCCA which he challenges should be reviewed under the standard provided in that statute.

### B. Ineffective Assistance of Appellate Counsel Claim

To succeed under § 2254, Roseboro must show that the DCCA's decision to deny his Motion to Recall the Mandate was contrary to, or involved an unreasonable application of, federal law. Furthermore, as Roseboro is raising a claim alleging ineffective assistance of counsel, he must overcome both the *Strickland* standard, and the barrier to review imposed by § 2254(d), resulting in review that is "doubly" deferential to the decision of the state court. *Knowles v. Mirzayance*, 556 U.S. 111, 129 (2009).

The standard for showing ineffective assistance of counsel was first established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There, the Supreme Court explained that in order to establish ineffective assistance of counsel, a defendant must demonstrate first that "counsel's performance was deficient." *Id.* The defendant must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The defendant must then show that the "deficient performance prejudiced the defense," by

depriving "the defendant of a fair trial, a trial whose result is reliable." *Id.* The prejudice prong of a *Strickland* inquiry asks whether, absent the error by counsel, "it is 'reasonably likely' the result would have been different." *Harrington v. Richter*, 562 U.S. 86, 111 (2011).

A state court's determination that trial counsel was constitutionally sufficient cannot be overturned in federal habeas review unless "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. This is because for the "purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Id.* at 101 (quoting *Williams,* 529 U.S. at 410). "If this standard is difficult to meet, that is because it was meant to be." *Harrington,* 562 U.S. at 102. Habeas review under § 2254(d) is intended to function as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-103. Thus, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington,* 562 U.S. at 102, 105.

The *Strickland* standard is equally applicable to ineffective assistance of appellate counsel claims. *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). Roseboro must show that his appellate counsel "was objectively unreasonable" in that he "unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Id.* If Roseboro establishes this objective deficiency, he must then show "a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed

on his appeal." *Id; See also United States v. Allmendinger,* 894 F.3d 121, 131 (4th Cir. 2018) (§ 2255 petitioner alleging ineffective assistance of counsel must show "a reasonable probability that, but for his counsel's [error], he would have prevailed on his appeal.") (internal citations and quotations omitted). As Roseboro is arguing his appellate counsel's performance was deficient for failing to raise the issue of trial counsel ineffectiveness, he must thus establish reasonable probability that the appellate court would have found that the performance of trial counsel itself failed the two-part *Strickland* test had the issue been raised. *See e.g., Garcia v. Scully*, 907 F. Supp. 700, 706 (S.D.N.Y. 1995).

The record provided by Roseboro is relatively sparse. He summarized relevant proceedings at trial and quoted from the trial transcript at times, but he did not provide the trial transcript, nor the brief filed by his appellate counsel. The only records from the state court proceedings that Roseboro supplied is a letter from his appellate counsel, the Memorandum Opinion denying Roseboro's appeal, and the brief and Order regarding his Motion to recall the Mandate. (ECF No. 3-1 at 1). Respondent did not provide any further supplementation of the record.

Further compounding this issue is the fact that the Order denying Roseboro's Motion to Recall the Mandate is a summary opinion that does not elaborate on the reasoning behind the decision. (*Id.* at 16). The Fourth Circuit has explained that:

> When the state court fails to articulate the rationale behind its ruling, we must independently review the record and the applicable law. However, this independent review of the record and applicable law must be distinguished from a *de novo* review of the petitioner's claims and from a requirement that we make an independent determination on the merits of those claims.

*Bell v. Jarvis*, 236 F.3d 149, 163 (4th Cir. 2000). Thus, this Court is tasked with canvassing the record to determine whether it can support the result of the state court's

summary disposition under the deferential standard of the AEDPA. *See Blaney v. Ballard*, No. 6:13-CV-08538, 2014 WL 1276502, at *14 (S.D.W. Va. Mar. 27, 2014); *see also Fullwood v. Lee,* 290 F.3d 663, 677 (4th Cir. 2002) ("Because we have no clear indication of the court's reasoning here, we will independently review the record and the law to make our 'contrary to' or 'unreasonable application' determination.").

Reviewing the merits of Roseboro's claim requires a series of discrete interlocked legal analyses. In order to determine if the DCCA's summary disposition of Roseboro's claim was contrary to, or an unreasonable application of, Supreme Court precedent, this Court is required to determine the legitimacy of Roseboro's claim of ineffective assistance of appellate counsel. As explained above, in order to make that determination, this Court must estimate the reasonable probability that the appellate court would have found, had the issue been properly raised, that the performance of trial counsel was itself deficient. Accordingly, to resolve this case the undersigned must determine first whether Roseboro's trial counsel's handling of the sleeping juror issue was constitutionally deficient, and then evaluate whether Roseboro's appellate counsel's failure to raise the issue was itself constitutionally deficient. Only after making these assessments would the undersigned be able to weigh the reasonableness of the DCCA's decision.

The record is not sufficiently developed for the undersigned to make these determinations. In order to assess the performance of Roseboro's trial counsel, the undersigned would have to determine whether or not any potential error by counsel prejudiced the outcome. This determination is not possible to make without any reliable indication of the course of the trial. While Roseboro does summarize some of the relevant proceedings, this alone does not present a sufficiently robust record to judge either his counsel's performance in the matter, or, assuming counsel committed an error, the

prejudice likely to result from the deficient performance.

Moreover, the undersigned is not able to review Roseboro's appellate attorney's performance as the only information regarding his nearly two-year representation of Roseboro comes from a single letter, the terse opinion by the DCCA dismissing the appeal, and Roseboro's contentions. The undersigned cannot judge the reasonableness of the appellate attorney's performance as there is no clear record of that performance. At first impression, Roseboro's claim that the decision to forego raising the issue of trial counsel's ineffectiveness impaired the appeal seems to have at least some merit. It appears the only issue raised on appeal was not considered on the merits based on trial counsel's procedural default. (ECF No. 3-1 at 4-5). However, as there is nothing in the record to indicate what reasons, or lack thereof, Roseboro's appellate counsel had for not raising the issue, the undersigned cannot determine whether the DCCA's decision to reject this claim was unreasonable in light of federal law.  Therefore, the undersigned **FINDS** that the record is inadequate to evaluate the merits of Roseboro's § 2254 petition.

### C.  Transfer in Interest of Convenience and Justice

In light of the fact that the record is incomplete and will require further development before the issue raised by Roseboro can be properly considered, the undersigned addresses whether the Southern District of West Virginia constitutes the appropriate venue for this development. As explained above, Roseboro's temporary incarceration within this jurisdiction provides this Court with jurisdiction over his habeas petition. Notwithstanding the issue of jurisdiction, a court nonetheless may transfer a civil action for the convenience of the parties or witnesses, or in the interest of justice, to any district where the action might have been brought. 28 U.S.C. § 1404(a); *see also, Braden v. 30th Judicial Circuit of Kentucky*, 410 U.S. 484 (1973). Habeas proceedings are

generally considered civil proceedings in nature. *See Hilton v. Braunskill*, 481 U.S. 770, 776, (1987); *see also Mayle v. Felix*, 545 U.S. 644, 654 n.4 (2005) ("Habeas corpus proceedings are characterized as civil in nature."); *Debruce v. Comm'r, Alabama Dep't of Corr.,* 758 F.3d 1263, 1294 (11th Cir. 2014) ("habeas corpus is a civil action").

Some lower courts have questioned whether, following the Supreme Court decision in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), jurisdiction exists in a district where the prisoner is no longer incarcerated. *See e.g. Hickam v. Janecka,* No. CIV 06-1132 JBRLP, 2007 WL 2219417, *6 (D.N.M. May 7, 2007). As, for reasons explained below, the undersigned concludes that transfer to United States District Court for the District of Columbia may be warranted, the question of whether jurisdiction would be proper in that district must be resolved.

In 1973, the Supreme Court allowed a petitioner, imprisoned in Alabama, to challenge a Kentucky state court detainer in Kentucky federal court because the Alabama warden was not "the person who [held] him in what [was] alleged to be unlawful custody." *Braden v. 30th Judicial Circuit of Kentucky*, 410 U.S. 484, 494-95 (1973). The Supreme Court went on to explain:

> In such a case, the State holding the prisoner in immediate confinement acts as agent for the demanding State and the custodian State is presumably indifferent to the resolution of the prisoner's attack on the detainer. Here, for example, the petitioner is confined in Alabama, but his dispute is with the Commonwealth of Kentucky, not the State of Alabama. Under these circumstances it would serve no useful purpose to … require that the action be brought in Alabama. In fact, a slavish application of the rule would jar with the very purpose underlying the addition of the phrase, 'within their respective jurisdictions.' We cannot assume that Congress intended to require the Commonwealth of Kentucky to defend its action in a distant State and to preclude the resolution of the dispute by a federal judge familiar with the laws and practices of Kentucky.

(*Id.* at 498-500) (citations omitted). Subsequently, in *Rumsfeld v. Padilla,* the Supreme

Court considered the question of the proper respondent in a § 2241 habeas action brought by a person detained as a federal enemy combatant in connection with the terror attacks of September 11, 2001. 542 U.S. 426 at 430-32. In *Padilla,* the petitioner challenged his designation as an "enemy combatant" by the President, as well as his detention in a naval brig in South Carolina. *Id.* at 431. The petitioner filed his § 2241 petition in the United States District Court for the Southern District of New York. *Id.* at 432.

The Supreme Court first determined that the general "immediate custodian rule" applied to the circumstances presented by the petition. *Id.* at 434. The immediate custodian rule stands for the proposition that the proper respondent to a habeas petition is "the person who has custody over [the petitioner]." *Id.* (citing 28 U.S.C. §§ 2242 & 2243). The *Padilla* Court further explained that the typical habeas petition, "'contemplate[s] a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary.'" *Padilla*, 542 U.S. at 435 (quoting *Wales v. Whitney,* 114 U.S. 564, 574, (1885)). Accordingly, the Court held that: "in habeas challenges to present physical confinement-'core challenges'-the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* Therefore, the *Padilla* Court found that the "warden" of the naval brig where the petitioner was physically confined was the custodian and thus the proper respondent. *Id.* at 442.

The *Padilla* Court did not overrule the earlier decision in *Braden*, but did distinguish the "present physical confinement" challenged by the petitioner in *Padilla,* with the "future" confinement faced by the habeas petitioner in *Braden. See id.* at 437-

438. The *Padilla* Court noted that in *Braden* the petitioner was challenging "confinement that would be imposed in the future," and was "'in custody' in Kentucky by virtue of the detainer." *Padilla*, 542 U.S. at 438. Therefore, the Kentucky court where the detainer was lodged, and not the Alabama warden, was "the person who [held] him in what [was] alleged to be unlawful custody." *Id.* (quoting *Braden,* 410 U.S. at 494-495). The *Padilla* Court thus declared that "nothing in *Braden* supports departing from the immediate custodian rule in the traditional context of challenges to present physical confinement." *Id.* at 438.

Following *Padilla*, "courts have struggled somewhat with the rather sweeping language the [Supreme] Court used to resolve the rather narrow issue presented in that case." *Watson v. Figueroa,* No. CIV–08–341–D, 2008 WL 2329106, at *4 (W.D.Okla. June 3, 2008). Despite the broad language employed in *Padilla*, district courts have largely continued to hold that a case is properly transferred to the jurisdiction of conviction when the petitioner is attacking his confinement based on the invalidity of that conviction. In determining that transfer under these circumstances is still proper following *Padilla*, several district courts have focused on the concurring opinion, written by two members of the five-justice majority, issued in that case. *See e.g. Figueroa,* No. CIV–08–341–D, 2008 WL 2329106, at *6.

In that opinion, Justice Kennedy, joined by Justice O'Connor, clarified that the jurisdictional rules announced in *Padilla* "are not jurisdictional in the sense of a limitation on subject-matter jurisdiction." *Padilla*, 542 U.S. 426 at 451 (Kennedy, J., concurring, joined by O'Connor, J.). Justice Kennedy instead believed that "the question of the proper location for a habeas petition is best understood as a question of personal jurisdiction or venue." *Id.* Justice Kennedy noted that the Supreme Court had established

a number of "exceptions" to the generally applicable immediate custodian rule, including an exception for cases involving "dual custody" *Id.* at 454 (citing *Braden*, 410 U.S., at 500). As none of these exceptions applied in the case at hand, Justices Kennedy and O'Connor joined the majority opinion declining to find jurisdiction in the Southern District of New York. *Id.* at 454-455. The four dissenting members of the Court also characterized the jurisdiction-venue rule as a "workable general rule that frequently gives way outside the context of 'core challenges' to executive confinement." *Id.* at 460 (Stevens, J. dissenting).

Lower courts largely have not hesitated to find that the circumstances presented here fit into an exception not subject to the generally applicable immediate custodian rule announced in *Padilla*. *See Figueroa,* No. CIV–08–341–D, 2008 WL 2329106, at *7 ("Although there is an *immediate physical* custodian, [the warden], this is not the *traditional context* of challenges to physical confinement: just as in *Braden*, there is another respondent who exercises *legal control* with respect to the challenged custody- The State of Colorado.") (emphasis original); *see also Holder v. Curley*, 749 F. Supp. 2d 644, 647 (E.D. Mich. 2010) (analyzing the propriety of transfer following *Padilla* and concluding, "an entity or person in the state of conviction is the petitioner's 'true custodian' for purposes of the federal habeas corpus statutes and the interests of justice favor adjudicating the petition in the state of conviction.") (collecting cases). This Court has previously considered an analogous case where a prisoner, by virtue of his incarceration within this district, brought a § 2254 claim challenging the validity of state court convictions imposed by North Carolina state courts. *Seay v. Cauley*, No. CIV.A. 1:11-0296, 2011 WL 1743011, at *5 (S.D.W. Va. May 5, 2011). Notwithstanding the decision in *Padilla,* this Court first questioned whether jurisdiction over these claims existed at all in

24

this district. *Id.* at *5. This Court then transferred the case stating, "[e]ven assuming that this Court does have jurisdiction, the Middle District of North Carolina would be the preferred venue because the State court records ... are within that district." *Id.* at n.4. Thus, "in the interest of justice," this Court transferred the petition to the Middle District of North Carolina. *Id.* at *5.

Other lower courts, with or without an accompanying analysis of the *Padilla* decision, have taken a similar approach with regards to state court offenders who attempt to raise § 2254 claims attacking the validity of their convictions, when those convictions were imposed within the jurisdiction of a different state. *See Llovera v. Fla.,* No. CA 4:13-859-TMC, 2013 WL 5468256, at *5 (D.S.C. Sept. 30, 2013) ("with respect to the underlying validity of his Florida state convictions and sentence, [p]etitioner's federal remedy must be sought under § 2254 in the United States District Court where the state court that imposed the convictions and sentence is located."); *see also Rowland v. Chrones*, No. 106-CV-1430OWWDLBHC, 2009 WL 77257, at *1 n.1 (E.D. Cal. Jan. 12, 2009) (finding no "jurisdiction to hear claims relating to the sentencing court where [p]etitioner was not sentenced in this district."); *Paul v. Delaware*, No. CIV.A. 1:11-1755, 2011 WL 6217114, at *1 (M.D. Pa. Oct. 31, 2011), *report and recommendation adopted*, No. 1:11-CV-1755, 2011 WL 6217112 (M.D. Pa. Dec. 14, 2011) (transferring § 2254 petition challenging Delaware state court convictions to the District of Delaware "for the convenience of the parties and in the interest of justice"); *Martin v. Warren*, No. CIV.A. 12-4670 AET, 2012 WL 3316830, at *2 (D.N.J. Aug. 13, 2012) ("where a prisoner brings a petition challenging a state conviction, but is confined in a state other than the state in which he was convicted ... federal courts have continued to hold that such a petition is properly transferred to the jurisdiction of conviction."); *Bender v. Ohio,* No. CIV A 07-41-

HRW, 2007 WL 2363151, at *2 (E.D. Ky. Aug. 16, 2007) ("Here, venue is appropriate either in Ohio, where [p]etitioner was sentenced and convicted, or in Kentucky, where [p]etitioner is currently detained. However, the convenience of the parties and the witnesses, and the interest of justice, would best be served by transferring this case to the United States District Court for the Northern District of Ohio."); *Downer v. Cramer*, No. 2:09–cv–106–P–A, 2009 WL 2922996, at *2 (N.D.Miss. Sept. 2, 2009) ("Whether or not an evidentiary hearing is required, it will be far more convenient for the State of California to respond to this action in California."); *Gustafson v. Williams*, No. 2:09–cv–01225, 2010 WL 1904518, at *3 (D. Nev. May 10, 2010) (transferring § 2254 petition challenging state court conviction to the District with jurisdiction over the state court); *Skamfer v. Hudson*, No. 98-6386, 1999 WL 79403, *1 (10th Cir. Feb.19, 1999) (unpublished) (affirming lower court's decision to transfer case to district of conviction under § 1404(a)); *Banks v. Holland*, No. 6:13-CV-63-HRW-REW, 2013 WL 1865476, at *2–3 (E.D. Ky. Mar. 27, 2013), *report and recommendation adopted*, No. CIV.A. 13-63-HRW, 2013 WL 1858623 (E.D. Ky. May 2, 2013); *Al-Amin v. Davis*, No. 12-CV-01197-BNB, 2012 WL 1698175, at *3 (D. Colo. May 15, 2012); *Reininger v. Jenkins*, No. 2:14-CV-356, 2014 WL 4274257, at *2 (S.D. Tex. Aug. 29, 2014).

As those convicted in local District of Columbia Courts are generally viewed as state court prisoners, many lower courts have similarly transferred federal prisoners challenging the validity of convictions they received in the local courts of the District of Columbia to the United States District Court for the District of Columbia. *See El-Amin v. English,* No. 18-3152-JWL, 2018 WL 3222598, at *2 (D. Kan. July 2, 2018) (finding District of Columbia offender "may pursue his claim alleging ineffective assistance of appellate counsel in a habeas corpus petition filed under 28 U.S.C. § 2254 in the district

of his conviction."); *see also Williams v. Warden Allenwood USP*, 647 F. App'x 65, 67 (3d Cir. 2016) ("Furthermore, [petitioner] has not provided any even arguable basis for the contention that his petition should have not have been transferred to the District of Columbia as the more convenient and appropriate forum."); *McCoy v. Thomas,* 194 F. Supp. 3d 1, 4 (D.D.C. 2016) (considering petition alleging ineffective assistance of appellate counsel brought by District of Columbia offender housed in Lewisburg, PA); *Lane v. United States*, No. CV 14-731 (RDM), 2015 WL 6406398, at *7 (D.D.C. Oct. 21, 2015) (indicating that jurisdiction may be more appropriate in Kentucky where petitioner was incarcerated, but considering the § 2254 petition on the merits); *Pearson v. Hollingsworth*, No. 16-1860 (RBK), 2016 WL 2624908, at *2 (D.N.J. May 9, 2016) ("While this Court is mindful of the deference owed to petitioner's choice of forum, the deference is outweighed by the factors pointing towards the United States District Court for the District of Columbia as being the better forum.").

The United States Court of Appeals for the District of Columbia apparently has also determined that, post-*Padilla*, the District of Columbia still retains jurisdiction over prisoners in Roseboro's position. *Williams*, the case on which Roseboro relies to bring his claim, involved a claim brought by a prisoner incarcerated in United States Penitentiary Allenwood in White Deer, Pennsylvania. *Williams v. Martinez*, 559 F. Supp. 2d 56, 57 (D.D.C. 2008), *rev'd and remanded*, 586 F.3d 995 (D.C. Cir. 2009). The petitioner in *Williams* originally brought his § 2254 petition in the Middle District of Pennsylvania, which then transferred the petition to the District of Columbia pursuant to § 1404(a). *Id.* at n.1. The District of Columbia Court of Appeals appeared unfazed by the question of whether jurisdiction was proper in its district following *Padilla*, as, upon determining that the petitioner's claim was cognizable in federal habeas review, the Court of Appeals

27

summarily remanded it to the District of Columbia District Court to reconsider under the standard set forth in § 2254. *See Williams v. Martinez*, 586 F.3d 995, 1002 (D.C. Cir. 2009). Therefore, the undersigned **FINDS** that, if transferred, the United States District Court for the District of Columbia will have jurisdiction over Roseboro's § 2254 petition.

In this case, Roseboro is attacking the validity of a conviction that was imposed in the District of Columbia. The trial court that imposed Roseboro's sentence is located within the jurisdiction of the United States District Court for the District of Columbia. All records of conviction, transcripts of proceedings, witnesses, counsel, and conviction records are likewise located within the District of Columbia. Federal judges sitting in the District of Columbia are likely to be more familiar with the relevant applicable local law, and the United States Attorney's Office for the District of Columbia, which was responsible for prosecuting Roseboro's trial, should have access to all the relevant records. *See Department of Justice Press Release,* (April 10, 2013).[3] Moreover, Roseboro himself is no longer present in this district. If this Court were to conclude that an evidentiary hearing is warranted in this case, Roseboro, as well as any other potential witnesses, such as appellate or trial counsel, would need to travel to this district in order to attend the hearing. As explained above, other district courts faced with similar circumstances have determined that transfer of the case is the most appropriate course.

This Court retains only a tenuous connection to the case at hand. Precedent in this Circuit mandates that the court conduct an independent review of the record under the circumstances presented here. *See Bell*, 236 F.3d at 163. However, the record provided by Roseboro and Respondent is incomplete. Given that none of the parties or witnesses to

---

[3] https://www.justice.gov/usao-dc/pr/district-man-sentenced-40-years-prison-murdering-16-year-old-northwest-washington-victim.

this case are present in this district, nor any of the relevant records needed for review, the undersigned **FINDS** that the convenience of the parties and the interests of justice weigh strongly in favor of a transfer of this case to the United States District Court for the District of Columbia.

### III.  <u>Proposal and Recommendations</u>

For the forgoing reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that Movant's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, (ECF Nos. 1, 3), be **TRANSFERRED** to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a), and that this action be **DISMISSED,** without prejudice, and removed from the docket of the court. Given the recommended dismissal of the petition, the undersigned further **RECOMMENDS** that the District Court **DENY** Respondent's Motion to Dismiss, (ECF No. 13), as **MOOT**.

The parties are is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review

by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Copenhaver and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED:** February 15, 2019

Cheryl A. Eifert
United States Magistrate Judge

30