**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RAYMOND R. ROSEBORO,

                    Petitioner

      v.

BARBARA RICKARD,

               Respondent.

Case No. 19-CV-2355 (EGS)

**PETITIONER'S REPLY BRIEF IN SUPPORT OF**
**PETITION FOR HABEAS CORPUS**

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

JULIA FONG SHEKETOFF
ASSISTANT FEDERAL PUBLIC DEFENDER
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500
julia_sheketoff@fd.org

*Counsel for Petitioner*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION ........................................................................................1

ARGUMENT ..............................................................................................1

I.      THE COURT SHOULD REJECT THE GOVERNMENT'S BELATED
        TIMELINESS ARGUMENT............................................................1

        A.      The Government Raises Its Timeliness Argument Too Late............................2

        B.      Mr. Roseboro Is Entitled to Equitable Tolling....................................6

II.     MR. ROSEBORO'S CLAIM OF INEFFECTIVE ASSISTANCE OF APPELLATE
        COUNSEL IS MERITORIOUS ........................................................11

III.    SECTION 2254(D) DOES NOT PRECLUDE RELIEF HERE.................................19

CONCLUSION..........................................................................................22

i

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................20

*Blount v. United States*, 860 F.3d 732 (D.C. Cir. 2017) ...............................................20

*Coleman v. Thompson*, 501 U.S. 722 (1991) ...............................................................21

*Coulter v. Kelley*, 871 F.3d 612 (8th Cir. 2017) ........................................................6, 9

*Coulter v. Kelley*, 876 F.3d 1112 (8th Cir. 2017) ......................................................6, 9

*Cullen v. Pinholster*, 563 U.S. 170 (2011).................................................................15

*Day v. McDonough*, 547 U.S. 198 (2006) ..................................................................3, 4

*Golsun v. United States*, 592 A.2d 1054 (D.C. 1991) ..................................................15

*Granberry v. Greer*, 481 U.S. 129 (1987) .....................................................................4

*Hankins v. United States*, 3 A.3d 356 (D.C. 2010) .....................................................12

*Harper v. Ercole*, 648 F.3d 132 (2d Cir. 2011) ........................................................9, 10

*Harrington v. Richter*, 562 U.S. 86 (2011) ............................................................12, 21

*Holland v. Florida*, 560 U.S. 631 (2010)................................................................6, 7, 8

*Houston v. Lack*, 487 U.S. 266 (1988)...........................................................................1

*Johnson v. Williams*, 568 U.S. 289 (2013) .................................................................20

*Luna v. Kernan*, 784 F.3d 640 (9th Cir. 2015) ..............................................................8

*Ramos v. Louisiana*, 140 S. Ct. 1390 (2020) ..............................................................18

*Robinson v. State Attorney for Florida*, 808 F. App'x 894 (11th Cir. 2020)................10

*Roe v. Delo*, 160 F.3d 416 (8th Cir. 1998)...................................................................13

*Samo v. Keyser*, 305 F. Supp. 3d 551 (S.D.N.Y. 2018)................................................10

*Strickland v. Washington*, 466 U.S. 668 (1984) .....................................................13, 18

*United States v. Barrett*, 703 F.2d 1076 (9th Cir. 1983)..............................................15

*United States v. Ibarra*, 502 U.S. 1 (1991) ...................................................................9

*Waters v. Lockett*, 896 F.3d 559 (D.C. Cir. 2018) ....................................................................11, 13

*Watson v. United States*, 536 A.2d 1056 (D.C. 1987) ...................................................................20

*Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017) .......................................................................18

*Wiggins v. Smith*, 539 U.S. 510 (2003) ........................................................................................13

**Statutes**

28 U.S.C. § 2254 ......................................................................................................... *passim*

**Rules and regulatory guidance**

D.C. Rule of Professional Conduct 3.3 .........................................................................................13

Fed. R. Civ. P. 8 ............................................................................................................................20

Fed. R. Civ. P. 15 ............................................................................................................................6

## INTRODUCTION

The government's strategy at this stage seems to be kick up new and varied procedural arguments to convince this Court to deny relief: supposedly Mr. Roseboro's petition is too late, he is precluded from getting an evidentiary hearing, his claim must be reviewed with double or even triple deference, his claim was either adjudicated on the merits or procedurally defaulted in the state courts, and so on.  The government spends very little time addressing the merits of Mr. Roseboro's claim that his appellate counsel was ineffective—and for good reason.  That claim is compelling, and it merits habeas relief.  Rather than raise a winning claim about his trial lawyer's utter failure to address the repeated misconduct of a juror, Mr. Roseboro's appellate lawyer raised only an obviously waived claim that the state court predictably and summarily rejected.  The government's potpourri of procedural arguments all fail to undermine that simple truth.  This Court should hold an evidentiary hearing and grant Mr. Roseboro's habeas petition.

## ARGUMENT

## I. THE COURT SHOULD REJECT THE GOVERNMENT'S BELATED TIMELINESS ARGUMENT

For the first time, more than *five years* after Mr. Roseboro filed his habeas petition and nearly *four years* after the government filed its response to that petition, the government makes the brand-new argument that Mr. Roseboro's petition is untimely.  That argument comes far too late, and entertaining it at this date is not in the interests of justice.  In any event, Mr. Roseboro is entitled to equitable tolling, rendering his petition timely.

### A. The Government Raises Its Timeliness Argument Too Late

Over five years ago, on March 22, 2017, Mr. Roseboro filed this habeas petition in the U.S. District Court for the Southern District of West Virginia.  *See Houston v. Lack*, 487 U.S. 266 (1988) (prisoner mailbox rule).  On September 25, 2018, the magistrate judge assigned to the

case "ordered [the government] to answer or otherwise respond to the Petition within forty-five (45) days of the entry of this Order showing cause, if any he has, why the relief sought by Petitioner should not be granted." Dkt. 11 at 1 (emphasis removed).  It further directed: "The answer should, insofar as possible, respond to the issues raised and *shall include* any available court or other records that would facilitate determination of the issues." *Id.* (emphasis in original).

In response to that order, the government filed a "motion to dismiss and response of the United States to court order regarding Petitioner's pro se motion for habeas corpus relief pursuant to 28 U.S.C. § 2254." Dkt. 13 at 1 (capitalization altered).  That was nearly four years ago, on November 9, 2018.  The government's "motion to dismiss and response … to court order" argued only that Mr. Roseboro's petition was defective on the merits: The government claimed that Mr. Roseboro's petition should be denied because the D.C. Court of Appeals' ("DCCA") resolution of Mr. Roseboro's ineffective-assistance-of-appellate-counsel ("IAAC") claim was reasonable and because, in any event, Mr. Roseboro's appellate counsel's performance was neither deficient nor prejudicial. *Id.* at 4-10.

Despite the magistrate judge's express instructions to "answer or otherwise respond … showing cause … why the relief sought by Petitioner should not be granted" and "respond to the issues raised," the government did not make any argument that Mr. Roseboro's petition was untimely. *Id.*  And despite the magistrate judge's directive to "include any available court or other records that would facilitate determination of the issues," the government did not file any of Mr. Roseboro's state court filings—which would have been necessary for the court to assess the timeliness of his petition. *Id.  See also* Dkt. 15 at 6 ("Respondent does not argue that Roseboro's claim is unexhausted, untimely, or improperly before this Court.").

The magistrate judge ultimately determined that, because it lacked the underlying state court records necessary to evaluate the merits of Mr. Roseboro's IAAC claim, and in the interests of justice, it was appropriate to transfer the case to the this district, where Mr. Roseboro was tried and convicted.   Dkt. 15 at 20-29.   The magistrate judge also recommended denying the government's motion to dismiss as moot in light of the recommended transfer.  *Id.* at 29.  The district court adopted the magistrate judge's recommendation to transfer the case to this district, but did not adopt the recommendation to dismiss as moot the government's motion to dismiss. Dkt. 17, 18.  That motion to dismiss thus remains pending.

Following transfer of Mr. Roseboro's case to this district, this Court appointed counsel for Mr. Roseboro and directed the parties to jointly make a recommendation about how to proceed. Minute Order of Nov. 13, 2019.  The parties subsequently proposed that counsel for Mr. Roseboro would file a supplemental brief further explicating Mr. Roseboro's IAAC claim; that the government would then respond; and that counsel for Mr. Roseboro would reply. Dkt. 27.  The Court then ordered Mr. Roseboro to file a "supplemental brief," the government to file "its response," and Mr. Roseboro to file "his reply."  Minute Order of Feb. 14, 2020.

Mr. Roseboro filed his supplemental brief on February 25, 2021.  In light of the government's still-pending motion's exclusive focus on the merits of Mr. Roseboro's IAAC claim, his brief solely addressed the merits of that claim, reiterating the same basic arguments he had previously raised.  But in response, the government changed the scope of the issues before the Court: For the first time, it argued that Mr. Roseboro's habeas petition—filed back in early 2017— was filed 41 days outside the statute of limitations.

As the Supreme Court has explained, "[o]rdinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto."  *Day v.*

3

*McDonough*, 547 U.S. 198, 202 (2006).   While a district court is nonetheless "permitted" to consider the timeliness of a habeas petition notwithstanding a habeas respondent's forfeiture of that defense, it is not "obliged" to do so.   *Id*. at 209.   And a court can only reach a forfeited timeliness defense if it has first "assure[d] itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue" and that the "interests of justice [are] better served by … dismissing the petition as time barred" rather than "addressing the merits."   *Id.* at 210; *see also Granberry v. Greer*, 481 U.S. 129 (1987) (appropriate for appellate court to revive an arguably meritorious procedural defense that habeas respondent has forfeited in "exceptional cases").

Here, while the government maintains that it did not *intentionally waive* its timeliness defense, there can be no dispute that the government *forfeited* the defense by admittedly "not assert[ing] the time bar during proceedings on petitioner's § 2254 petition in the Southern District of West Virginia."   Resp. Opp. at 14 n.16, Dkt. 39 ("Opp.").   As in the ordinary course, this Court should thus decline to consider that forfeited defense.

The government implies that, because the magistrate judge in the Southern District of Western Virginia supposedly did not "reach the merits of petitioner's claim" and instead "transferred the § 2254 petition to this Court for resolution," that somehow excuses its forfeiture.   Opp. at 13.   It does not.   The magistrate judge was unable to assess whether to grant or deny Mr. Roseboro's petition, and instead recommended transferring the case to this district, specifically *because of* the government's failures: "Respondent did not provide any further supplementation of the record," despite the judge's prior order asking it to do so.   Dkt. 15 at 18-20; *accord id.* at 19 ("The record is not sufficiently developed for the undersigned to make these determinations.").   If the government had timely raised its statute-of-limitations defense and provided the state court filings relevant to that defense, the magistrate judge would have been able to resolve the defense

4

at that time.  Instead, as the judge specifically explained, "Respondent does not argue that Roseboro's claim is unexhausted, untimely, or improperly before this Court." *Id.* at 6.

It is not in the interests of justice for this Court to resuscitate the government's long-ago-forfeited timeliness defense.  The merits of Mr. Roseboro's IAAC claim were thoroughly briefed in the Southern District of West Virginia on the assumption that the petition was timely filed.  The case was transferred to this district for supplementation of the record and merits resolution on that same assumption.  This Court appointed counsel for Mr. Roseboro on that assumption.  With the assistance of counsel, Mr. Roseboro filed a supplemental brief on that assumption.  The parties obtained the full state court record on that assumption.  The government's motion to dismiss on the merits remains pending and is now finally ripe for resolution—more than five years since the case was filed.  At this late hour, the appropriate course is for this Court to adjudicate the motion to dismiss and resolve the case on the merits.

Furthermore, as discussed below, reasons outside Mr. Roseboro's control delayed his ability to file his habeas petition.  *See infra* Part I.B.  Those reasons entitle Mr. Roseboro to equitable tolling, rendering his petition timely filed*.  See id.*  But regardless of whether or not equitable tolling applies here, those circumstances are another reason that the interests of justice favor adjudicating Mr. Roseboro's petition on the merits.  Mr. Roseboro is a pro se litigant who managed to file a habeas petition on his own despite significant headwinds created by someone else.  *See id.*  Respondent is represented by sophisticated counsel with the federal government's resources at his back.  It would be particularly unjust to excuse the government's untimely

invocation of its statute-of-limitations defense, which comes *several years* too late, in order to deny Mr. Roseboro's pro se petition as untimely because he supposedly filed *41 days* too late.[1]

**B.    Mr. Roseboro Is Entitled to Equitable Tolling**

Equitable tolling is available when a habeas petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010).  As explained below, Mr. Roseboro can make both showings.

*1.    Extraordinary Circumstance.*    Mr. Roseboro's appellate attorney committed malfeasance that constitutes an extraordinary circumstance warranting equitable tolling.  The appropriateness of equitable tolling must be assessed on a "case-by-case basis" with "flexibility" and without "mechanical rules."  *Id.* at 650.  While "a simple miscalculation that leads a lawyer to miss a filing deadline" and other "garden variety claim[s] of excusable neglect" by counsel do not warrant equitable tolling, other "[p]rofessional misconduct" can rise to "egregious behavior and create an extraordinary circumstance that warrants equitable tolling."  *Id.* at 651.  Here, Mr. Roseboro's attorney's behavior was "egregious."

Mr. Roseboro's state-court appeal was fully briefed by January 21, 2015.  Shortly thereafter (in a letter dated January 28, 2015), Mr. Roseboro's appellate counsel told him that he could

---

[1] The Eighth Circuit's ruling in *Coulter v. Kelley*, 871 F.3d 612 (8th Cir. 2017), *vacated by Coulter v. Kelley*, 876 F.3d 1112 (8th Cir. 2017), is not to the contrary, and was vacated in any event. There, "the State moved to amend its response to include the defense that [the petitioner's] original petition was untimely" and the district court "therefore properly analyzed the State's motion under Rule 15(a)(2)," which governs amendments to pleadings.  *Id.* at 619.  Here, the government has not sought to amend its response under Rule 15(a)(2) and its originally filed response and motion to dismiss remains pending.  Moreover, the government would be unable to show that "justice … requires" the Court to permit amendment for all the same reasons discussed above.  *See* Fed. R. Civ. Proc. 15(a)(2).

"expect a decision from the court in approximately six to 18 months" and he promised that "[a]s soon as we hear anything, I will let you know." ADD1.  On April 12, 2015, Mr. Roseboro's lawyer told Mr. Roseboro that his appeal had been calendared and he committed again to "provide you with a copy of the decision as soon as it is issued." ADD3.  But on May 29, 2015, when the DCCA issued its decision and affirmed Mr. Roseboro's convictions (A47, A1527), his counsel did *not* advise him as promised.  Rather, over two months after the decision had been issued, Mr. Roseboro's appellate attorney informed him that the case was still "submitted" to the DCCA, which "mean[t] that the only step left is for the court to issue a decision." ADD4.  Again, counsel made the same promise to advise Mr. Roseboro of the decision as soon as it was issued: "I will, of course, inform you immediately when that occurs." *Id.*  Counsel wrote again to Mr. Roseboro on September 3, 2015, but again failed to inform him that the DCCA's decision had already issued. ADD4.  Only in February 2016 did counsel finally tell Mr. Roseboro what had happened *over eight months earlier*: that "[u]nfortnately, the court affirmed your conviction." ADD7.

In other words, after repeatedly promising Mr. Roseboro that he would inform him of the DCCA's decision as soon as it was issued, counsel delayed in advising Mr. Roseboro that the DCCA had denied his appeal—and that the statute of limitations for filing his habeas petition had started running—for *over eight months*.  Worse yet, he affirmatively *misled* Mr. Roseboro.  Nearly two months *after* Mr. Roseboro's appeal had been denied, he falsely informed Mr. Roseboro that that Court had *not yet issued its decision*.  Mr. Roseboro, who had been promised he could rely on his attorney to provide timely and accurate information about his appeal, had no way to know that

he was actually on his own.  This was "serious … attorney misconduct," not garden-variety negligence.  *Holland*, 560 at 651-52.[2]

The government protests that Mr. Roseboro's attorney's misconduct did not "prevent" him from timely filing his habeas petition, supposedly because he still had around seven months left to prepare his petition after he learned of the DCCA's disposition of his direct appeal.  Opp. at 22-23.  But that ignores that Mr. Roseboro first had to prepare and file his motion to recall the mandate in the DCCA, and that he could only draft and file his habeas petition once the DCCA provided its reasons for rejecting that motion.  *See* 28 U.S.C. § 2254(c), (d).  It also ignores that there are good reasons supporting Congress's selection of a yearlong statute of limitations rather than one of just a few months: habeas petitioners are often pro se, habeas law is notoriously complex, habeas petitions are subject to a stringent standard of review, and prisoners are often restricted in their practical ability to draft their petitions while incarcerated.  Each of those factors combined here to make it time-consuming for Mr. Roseboro to draft his motion to recall the mandate and his habeas petition.[3]  Nonetheless, he filed his motion to recall the mandate well within time period that the DCCA allotted to him (ADD13) and took only five months after the DCCA's decision to file his

---

[2] The government says that "attorney negligence, even gross or egregious negligence, does not by itself qualify as an extraordinary circumstance for purposes of equitable tolling," and that Mr. Roseboro must instead show "complete abandonment" or other analogous misconduct, citing two opinions from the Eleventh Circuit.  Opp. at 21.  Although the government does not admit it, those decisions are recognized outliers.  They do not represent the law in this or other Circuits.  *See, e.g.*, *Luna v. Kernan*, 784 F.3d 640, 649 (9th Cir. 2015) ("our cases holding that egregious attorney misconduct of all stripes may serve as a basis for equitable tolling remain good law"); *see also Holland*, 560 U.S. at 650 ("emphasizing the need for flexibility [and] for avoiding mechanical rules").

[3] For example, Mr. Roseboro was transferred to a different prison in January 2016, which delayed until mid-February 2016 his receipt of counsel's letter informing him of the DCCA's denial of his appeal.  He was also held in a Special Housing Unit in August 2016, during which time he was unable to access the transcripts from his trial and was prevented from using the law library.

habeas petition.  As a result, even with the *eight-month* delay caused by his appellate lawyer, the government says he was only 41 days late in filing his habeas petition.[4]  Mr. Roseboro was entitled to use some of those eight months for the extremely challenging task of filing his pro se petition.

Moreover, Mr. Roseboro's burden here is not to show that it was humanly impossible to file earlier than he did.  Rather, if he establishes both an extraordinary circumstance and reasonable diligence during that circumstance, equitable tolling *pauses* the statute-of-limitations during the time that the extraordinary circumstance existed.  As the Second Circuit has explained: If "a party seeking equitable tolling … show[s] diligent pursuit of his claim *throughout the period he seeks to toll*," then "a court may suspend the statute of limitations for the period of extraordinary circumstances and determine timeliness by reference to the total untolled period without requiring a further showing of diligence through filing." *Harper v. Ercole*, 648 F.3d 132, 139 (2d Cir. 2011) (emphasis in original).  "Such an approach to determining the timeliness of a § 2254 filing is consistent with the general rule of equitable tolling articulated by the Supreme Court: 'Principles of equitable tolling usually dictate that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped.'" *Id*. (quoting *United States v. Ibarra*, 502 U.S. 1, 4 n. 2 (1991)).  Here, the period during which Mr. Roseboro's attorney misled him was eight months.  There can be no dispute that, if his statute of limitations is paused for that period, his habeas petition is timely.

---

[4] Even assuming that Mr. Roseboro's petition was filed late, it was not filed 41 days late.  As the government concedes, the prisoner-mailbox rule applies to his filings—yet the government begins statutory tolling on the date the DCCA *received* Mr. Roseboro's motion to recall the mandate.  The correct date is the date that Mr. Roseboro deposited the motion in the prison mail system, which was at least several days before that.

The cases on which the government relies are inapposite.  In *Coulter v. Kelley*, 871 F.3d 612 (8th Cir. 2017), *vacated by Coulter v. Kelley*, 871 F.3d 1112 (8th Cir. 2017), for example, petitioner's counsel caused a delay of only four months rather than the eight here, and caused the delay through a single mistake—not by affirmatively misleading the petitioner about the status of his state-court proceedings.  Anyway, that case was decided on reasonable-diligence grounds and, as discussed below, Mr. Roseboro has been diligent throughout his proceedings, and certainly during the eight months that his counsel led him to believe his appeal was still pending (*see infra* Part I.B.2).  (The opinion was also subsequently vacated.)  Similarly, *Samo v. Keyser*, 305 F. Supp. 3d 551 (S.D.N.Y. 2018), and *Robinson v. State Attorney for Florida*, 808 F. App'x 894 (11th Cir. 2020), involved simple inaction by the petitioner's attorney—not the eight-month delay resulting from an *affirmative misrepresentation* that Mr. Roseboro experienced here.  Indeed, the government has not found a single case where equitable tolling was denied under circumstances analogous to those here.  Mr. Roseboro's appellate attorney's conduct constitutes an "extraordinary circumstance" warranting equitable tolling.

   *2.*   ***Reasonable Diligence.***  Mr. Roseboro pursued his rights with reasonable diligence. During his representation by his appellate attorney, he regularly communicated with the attorney about his case.  *E.g.*, ADD2, ADD5, ADD6.  He inquired about the status of his appeal, and he requested and received legal materials about his case, including trial transcripts, photographs, and mail matter.  *See id.*  As discussed above, when he learned in mid-February 2016 (eight months after the fact) that the DCCA had denied his direct appeal, he promptly sought an extension of time to move to recall the mandate.  ADD8-12.  When the DCCA granted that extension (ADD13), he filed his motion to recall the mandate within a month—and two weeks before the new deadline the DCCA had set.  Then, when the DCCA denied Mr. Roseboro's motion to recall the mandate,

he filed his thorough and detailed habeas petition within five months.  Considering the variety of obstacles complicating the task of filing his habeas petition, *see supra* at 8, Mr. Roseboro acted with reasonable diligence.  According to the government's calculations, Mr. Roseboro needs only 41 days of equitable tolling for his petition to be timely filed.  *See Harper*, 648 F.3d at 139.  He amply deserves that—and more.

## II.   MR. ROSEBORO'S CLAIM OF INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL IS MERITORIOUS

As Mr. Roseboro explained in his supplemental brief, he is entitled to habeas relief because his IAAC claim is meritorious.  *See* Pet'r's Supp. Br. Part II, Dkt. 34 ("Supp. Br.").  The government's principal response is that a state court judgment receives deference under § 2254(d) and that Mr. Roseboro cannot prevail under that deferential standard.  But as Mr. Roseboro has previously shown, and as further discussed below, § 2254(d) poses no bar to relief here.  *See* Supp. Br. Part III; *see infra* Part III.  On the de novo review to which Mr. Roseboro is entitled, there can be no question that he warrants habeas relief—and, indeed, the government never mounts a contrary argument.

**A.**   As Mr. Roseboro has already demonstrated, his appellate lawyer was constitutionally ineffective in failing to argue on appeal that trial counsel was ineffective when he took no action to investigate or remedy the misconduct of a juror who slept through large portions of Mr. Roseboro's trial.  Instead, appellate counsel raised only a complaint about how the trial *court* handled the juror, but the court simply did what Mr. Roseboro's trial *counsel* asked it to do, and so any competent appellate lawyer would have understood that Mr. Roseboro had waived that claim.  By raising only a single claim that placed the blame on the trial court instead of on trial counsel, Mr. Roseboro's appellate lawyer "ignored" an issue that was "clearly stronger than" the

one he "presented," *Waters v. Lockett*, 896 F.3d 559, 568 (D.C. Cir. 2018), thus performing well below the constitutional requirement for adequate counsel. *See* Supp. Br. Part II.

The government claims that Mr. Roseboro's appellate lawyer performed appropriately because he could have reasonably concluded that the DCCA would have rejected a challenge to trial counsel's performance. Not so. For all the reasons that Mr. Roseboro has already identified, had Mr. Roseboro's appellate counsel raised the ineffective-assistance-of-trial-counsel ("IAC") claim that Mr. Roseboro asked him to raise, there is a reasonable probability that the DCCA would have found the claim meritorious. *See* Supp. Br. Part II.B. Any competent appellate lawyer would have understood that. Failing to raise the IAC claim was not a matter of reasonable "tactics." *Contra* Opp. at 35 (quoting *Harrington v. Richter*, 562 U.S. 86, 109 (2011)).

Indeed, even the government appears to acknowledge that the claim Mr. Roseboro's appellate counsel did raise was far weaker than the IAC claim he failed to raise.[5] That is because, under binding case law, the claim counsel raised was obviously waived. *See* Supp. Br. Part II.A (citing, *e.g.*, *Hankins v. United States*, 3 A.3d 356, 358 n.1 (D.C. 2010)). The government says that Mr. Roseboro's appellate counsel "was not oblivious to th[e] risk" that the DCCA would find waiver, and that counsel thus argued to the court that "the claim was neither waived nor subject to plain error review." Opp. at 40; *see also* A1467-68 n.14 (appellate counsel addressing waiver in a single sentence in a single footnote). But far from exonerating appellate counsel, his awareness

---

[5] The closest the government comes to suggesting otherwise is when it notes that several appellate decisions reversed a conviction because a trial court had refused to take remedial action about a sleeping juror. *See* Opp. at 39. But in those cases trial counsel *had preserved the claim* about the trial court's error. The government also points to a handful of cases where courts have found that trial counsel may have made a reasonable strategic decision to retain a particular juror. *See* Opp. at 37-38. Those cases are irrelevant. While in other circumstances a trial lawyer *could* have a strategic reason for retaining a particular juror despite misconduct, for all the reasons Mr. Roseboro has given, that is not the case here.

of the waiver problem makes his single-minded focus on that claim even more inexplicable.  In light of the DCCA's unambiguous case law about waiver, and particularly its decision in the nearly identical *Hankins* case (3 A.3d at 358 n.1), no competent attorney would have believed he could get around the waiver issue.  The claim was plainly doomed; even the government refrains from representing otherwise.  Mr. Roseboro's appellate lawyer's decision to raise an obviously-waived claim dispels any notion that his failure to raise the much stronger, preserved IAC claim was a strategic decision.  *See Waters*, 896 F.3d at 568; *Roe v. Delo*, 160 F.3d 416, 419 (8th Cir. 1998).

**B.**     The government argues that trial counsel's decision not to ask the trial court to investigate or remove the sleeping juror could reflect sound trial strategy.  Wrong again.  For one thing, counsel could hardly make a strategic decision about how to handle the sleeping juror when he was admittedly *unable to see the juror*.  When Mr. Roseboro's second-chair attorney informed the trial court about the problem, his first-chair attorney acknowledged that he "ha[d]n't noticed" because "*my view of him is blocked by the lectern there*."  A752 (emphasis added).  Assuming that statement was true, as we must (*see* D.C. Rule of Professional Conduct 3.3(a)(1) ("A lawyer shall not knowingly [m]ake a false statement of fact or law to a tribunal….")), it means that trial counsel had no idea whether the juror slept through the government's examinations or the defense cross examinations, whether the juror missed testimony that turned out to be helpful to the defense or favorable to the government, whether the juror remained awake for the defense's opening statement or just the government's, and whether the juror's slumber (and his demeanor while awake) varied based on whether the government or the defense was at the podium.  Without that information, and without any further investigation, trial counsel could not have formed any reasonable strategic view about whether he wanted to retain the juror.  *See, e.g.*, *Strickland v. Washington*, 466 U.S. 668, 691 (1984) ("counsel has a duty to make reasonable investigations or

to make a reasonable decision that makes particular investigations unnecessary"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (finding that attorneys performed deficiently by "end[ing] their investigation when they did").

Moreover, if trial counsel had a valid strategic reason to keep the misbehaving juror on the jury, surely he would have informed Mr. Roseboro's second-chair trial attorney not to continue drawing attention to the juror's misconduct.   But Mr. Roseboro's second-chair attorney complained to the court about the juror *twice*—and the second time came after he and Mr. Roseboro's first-chair attorney had plenty of time to confer about his first complaint.  *See* A795 ("that same juror … is communicating to people").  The government points out that the second-chair attorney's second complaint did not focus on the juror's sleeping—it was instead about the juror's inappropriate communications with another juror—but that is irrelevant.  The point is that, if trial counsel's failure to demand an investigation into the juror stemmed from a reasonable strategic determination that keeping the juror was advantageous to the defense, then Mr. Roseboro's second-chair attorney would not have complained *twice* about that juror.   Mr. Roseboro's first- and second-chair attorneys were working together to defend him at trial.  Any appropriate trial strategy surely would have been followed by both of them.

In addition, the juror's pattern of misconduct plainly did *not* bode well for Mr. Roseboro— and no sound trial strategy could have supported a deliberate attempt to keep him on the jury absent more information (gleaned in a hearing).  As Mr. Roseboro has explained, his second-chair attorney told the court (without contradiction by the government) that "the only time we really had [the sleeping juror's] full attention is when the trial first started and when we presented the autopsy photos."  A752.  The juror's disproportionate focus on the government's opening statement and

14

the autopsy photos was obviously a bad sign for the defense.  And his refusal to follow the judge's instructions was another.  *See* A795 (juror communicating with another juror during trial).

The government suggests that Mr. Roseboro's trial attorney may have wanted to see how the juror behaved during the defense case before allowing the court to take any action.  But trial counsel in fact asked for a hearing before the defense case started; he simply failed to follow up on that request.  Anyway, without a hearing, and without having been able to see the juror's behavior during (for example) the defense cross examinations of the government's witnesses, trial counsel lacked the information necessary to determine that the juror should remain as long as he did not continue to sleep during the defense's case.  In any event, the juror *did* continue to sleep. *See, e.g.*, Dkt. 33-1 ¶ 5 (juror slept during closing argument).[6]  Mr. Roseboro's trial attorney needed to follow up on his earlier request for a hearing.

The government also says that Mr. Roseboro exaggerates what the trial court would have been required to do if his attorney had asked for a hearing.  But while judges certainly have some discretion about how to handle sleeping jurors, the law is clear that if "the court notices, or is informed, that a juror is asleep during trial, the court has a responsibility to inquire and to take further action if necessary to rectify the situation."  *Golsun v. United States*, 592 A.2d 1054, 1057 (D.C. 1991).  "The trial court should begin, for example, with a hearing to determine whether the

---

[6] The government argues that *Cullen v. Pinholster*, 563 U.S. 170 (2011), precludes Mr. Roseboro from introducing evidence that was not presented in state court.  Opp. at 32-34.  But *Cullen* only restricts a habeas court from examining evidence that was not before the state court when the habeas court is determining, under § 2254(d), whether the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d); *see Cullen*, 563 U.S. at 184.  *Cullen* makes clear that, "where § 2254(d) does *not* bar federal habeas relief," a habeas court *may* hold an evidentiary hearing whenever it is appropriate under § 2254(e)(2) and *may* consider evidence not submitted to the state court.  *Id.* at 185 (emphasis added).  For the reasons discussed below and in Mr. Roseboro's supplemental brief, § 2254(d) does not bar federal habeas relief here.  *See* Supp. Br. Part III; *see infra* Part III.

juror had been asleep and, if so, whether the juror had 'miss[ed] essential portions of the trial.'"
*Id*. (quoting *United States v. Barrett*, 703 F.2d 1076, 1083 n.13 (9th Cir. 1983)) (alterations in
original).  Here, there was no dispute that the juror was sleeping: defense counsel, the prosecutor,
and the court *all* observed it.  A751-52, A795.  If Mr. Roseboro's counsel had pressed the issue
rather than recklessly abandoning it, there can be no doubt that the trial court would have had to
hold a hearing and take all necessary remedial action.

     **C.**    The government makes three incorrect claims about Mr. Roseboro's showing of
prejudice here.  First, it says that Mr. Roseboro cannot show a reasonable probability that the
outcome of his appeal would have been different if his appellate counsel had raised an IAC claim,
because the DCCA supposedly determined that the sleeping juror's continued presence on the jury
was harmless when it rejected Mr. Roseboro's motion to recall the mandate.  *See* Opp. at 40-41.
The government's argument requires it to ignore what the DCCA actually said.  The DCCA ruled:
"Nor, *in the absence of an objection at trial*, can appellant show any likelihood that he was
prejudiced by the judge's failure to take further action on the sleeping juror report."  A1528
(emphasis added).  In other words, *because Mr. Roseboro's trial attorney had not requested any
action, and had not substantiated his need for that (un-requested) action*, Mr. Roseboro could not
show that the court's failure to take that action harmed him.  That is just another way of saying
that Mr. Roseboro's attorney's waiver of the juror issue precluded appellate review of that issue.
It does not indicate that, had trial counsel lodged an appropriate objection and made a request for
further action by the trial court, the DCCA would have found any resulting inaction by the trial
court to be harmless.  And it certainly does not indicate that, had appellate counsel complained
about trial counsel's ineffectiveness in failing to object to the sleeping juror, the DCCA would
have found counsel's incompetence non-prejudicial.

Second, the government argues that the evidence against Mr. Roseboro was stronger during the third trial than during the first and second trials, and that the additional evidence would have caused any jury to convict Mr. Roseboro.  *See* Opp. at 41-43.  The government dramatically overstates the strength of its case.  As Mr. Roseboro recounted in his supplemental brief, the witnesses who tied him to the murder were both biased and extensively impeached.  *See* Supp. Br. Part II.B.2.  Those witnesses failed to persuade many of the jurors in the first two trials—resulting in two mistrials—and there is no basis to conclude that their testimony would have been any more convincing during Mr. Roseboro's third trial.

As the government points out, Julia Holloway was a new addition to the government's roster of witnesses during the third trial, but she too was a deeply flawed witness.  Holloway, who was Mr. Roseboro's girlfriend at the time of Okorie's murder and was with him on the afternoon the murder occurred, admittedly lied repeatedly to the government.  During her first two meetings with the prosecutor, she said that she and Mr. Roseboro were just friends and that she never went to Mr. Roseboro's house on the day of Okorie's killing.  A1258-61.  Indeed, according to Holloway, she had no recollection of even spending time with Mr. Roseboro that day.  *Id.* Holloway instead maintained that she had gone to study hall at school and then to basketball practice.  *Id.*  But during her third meeting with the prosecutor, Holloway suddenly produced a brand-new account of events that day, which was inconsistent with the testimony of Mr. Roseboro, his mother, and his cousin.  A1261-62.  It was that final account that Holloway repeated at trial as the government's witness.  But given Holloway's own admission that she lied multiple times, any juror who was paying attention easily could have concluded that she was lying again, and discounted or disregarded her testimony.  A juror could also have inferred that Holloway was biased against Mr. Roseboro; they had since broken up, Mr. Roseboro had had a child with another

17

woman, and Holloway was palpably hostile towards defense counsel, going so far as to storm off the witness stand and out of the courtroom in the middle of her cross examination (A1272).  If Mr. Roseboro had had the attention of all 12 of his jurors, there is a reasonable chance that at least one juror would have held out for acquittal—just as in his first two trials.[7]

Third, the government disputes Mr. Roseboro's alternative argument that the fundamental unfairness resulting from his counsel's ineffectiveness constitutes prejudice, because (it says) courts have not previously held that a trial attorney's failure to seek a hearing or remedy for a sleeping juror is a "structural error."  Opp. at 43-44.  But Mr. Roseboro is making an IAC claim, and the Supreme Court has held that "the ultimate focus of the inquiry [on an IAC claim] must be on the *fundamental fairness of the proceeding* whose result is being challenged."  *Strickland*, 466 U.S. at 696 (emphasis added); *accord Weaver v. Massachusetts*, 137 S. Ct. 1899, 1913 (2017) (assuming that a habeas petitioner can establish prejudice on an IAC claim by showing that "attorney errors rendered the trial *fundamentally unfair*" (emphasis added)).  As Mr. Roseboro has explained, regardless of what might have happened had the sleeping juror been properly investigated, admonished, or removed from the jury, it rendered his trial fundamentally unfair not to have the attention and consideration of all of his jurors.  *See* Supp. Br. at 20-21.  Without that, the accusations against Mr. Roseboro were not "'confirmed by the unanimous suffrage of twelve of his equals and neighbors,'" which is one of the "fundamental" guarantees of the Constitution.

---

[7] The government claims that Holloway's testimony was corroborated by phone records indicating her phone made an unanswered call to Mr. Roseboro before the murder.  The government says this "show[s] that they were not together at that time," Opp. at 30, but it does no such thing.  Even assuming the phone actually belonged to Holloway (*but see* A1264-65 (Holloway told prosecutor that she "didn't even have a cell during this period of time")), the call could have been a pocket dial or a misdial.  Again, a conscious and attentive juror could have concluded that Holloway's contrary testimony was false in light of her history of prior lies.

*Ramos v. Louisiana*, 140 S. Ct. 1390, 1395, 1397 (2020) (quoting 4 W. Blackstone, Commentaries on the Laws of England 343 (1769)).  That suffices to show prejudice.

*     *     *

In short, Mr. Roseboro's trial counsel was obligated to investigate further—by at minimum asking the Court to hold a hearing—before abandoning all concern about the pervasive misconduct of one of Mr. Roseboro's jurors.  It was not reasonable, and it was not appropriate strategy, to blindly press on with the trial without taking any steps to ensure that Mr. Roseboro's right to a fair and impartial jury was protected.  There is a reasonable probability that, but for trial counsel's inaction, the outcome of Mr. Roseboro's trial would have been different.  And regardless, trial counsel's inadequacy deprived Mr. Roseboro of his right to a unanimous 12-person verdict and thus rendered his trial fundamentally unfair.  Accordingly, Mr. Roseboro's appellate counsel clearly should have raised an IAC claim complaining of trial counsel's ineffectiveness rather than the hopeless and waived claim he raised in its place.

## III.    SECTION 2254(D) DOES NOT PRECLUDE RELIEF HERE

As Mr. Roseboro has previously demonstrated, § 2254(d) does not pose a bar to relief here.  That provision applies only where a claim was "adjudicated on the merits in State court proceedings," and Mr. Roseboro's claim was not so adjudicated.  Rather than assess the claim as a simple matter of federal of constitutional law, the state court resolved it on a state-law ground about the factual showing necessary to prevail on a motion to recall an appellate mandate.  Regardless, Mr. Roseboro satisfies the requirements imposed by § 2254(d) because the state court's decision was manifestly unreasonable.  *See* Supp. Br. Part III.

The government insists that Mr. Roseboro's claim *was* adjudicated on the merits in state court, because it was not resolved on purely "procedural" grounds, such as timeliness.  But the government misunderstands what it means for a federal constitutional claim to be adjudicated "on

19

the merits" for purposes of § 2254(d).  It is not enough for the state court to engage with the so-called "merits" of a claim if it does so based on a *state law requirement* that demands something different from—and more stringent than—the federal constitutional standard.  It must resolve the claim pursuant to *the federal constitutional standard* that governs the merits of the claim.  *Cf. Johnson v. Williams*, 568 U.S. 289, 301 (2013) ("But what if, for example, in at least some circumstances the state standard is less protective [than the federal standard]? … In such circumstances, the presumption that the federal claim was adjudicated on the merits may be rebutted").

Here, the DCCA resolved Mr. Roseboro's claim by applying its state-law rule about the heightened *factual* showing a party must make in order to justify recalling the mandate.  The Court held that Mr. Roseboro had failed to carry his "heavy burden" of "setting forth *in detail, 'chapter and verse,'* a persuasive, *factually* based argument for recalling the mandate."  A1541 (emphasis added); *see also Watson v. United States*, 536 A.2d 1056, 1060 (D.C. 1987) ("To put it another way, *conclusory assertions* are not sufficient." (emphasis added)); *id.* ("this court will be looking more for *factual support* than argument").  This state-law requirement about the factual showing necessary to prevail on a motion to recall the mandate—reminiscent of Federal Rule 8's demand that a civil plaintiff make "plausible" rather than "conclusory" factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)—is *not* part of the federal constitutional standard governing IAAC claims.  Indeed, the D.C. Circuit has previously distinguished between "the standard for recalling the mandate" under D.C. law (which is a "threshold inquiry") and the constitutionally-based inquiry into "whether [an IAAC claimant] met the standard for vacating his conviction on direct review."  *Blount v. United States*, 860 F.3d 732, 739 (D.C. Cir. 2017).  Because the DCCA resolved

Mr. Roseboro's claim under its state-law rule about factual pleading, it did not adjudicate the claim "on the merits" for purposes of § 2254(d).[8]  Section 2254(d) thus poses no bar to relief here.

That would remain the case even if the government were correct that the DCCA did adjudicate Mr. Roseboro's IAAC claim on the merits.  The DCCA's reason for rejecting Mr. Roseboro's claim was that it believed Mr. Roseboro failed to provide sufficient *facts* to make out his IAAC claim.  But as discussed in Mr. Roseboro's supplemental brief, his motion to recall the mandate identified *all* of the relevant facts to which he had access.  *See* Supp. Br. Part III.B.  He provided an impressively detailed description of the evidence at trial, the misconduct of the juror, and his specific request to his appellate counsel that he raise an IAC claim.  There was no additional factual information that Mr. Roseboro could or should have provided to demonstrate the strength of his claim.  The DCCA's contrary conclusion was unreasonable.  *See id.*[9]

---

[8] Contrary to the government's representations (Opp. at 30-32), the DCCA's invocation of the state-law requirement that a movant provide factual detail amounting to "chapter and verse" provides no barrier for relief here.  A state court's reliance on a state-law ground to deny relief precludes federal review of a habeas petitioner's claim (absent cause and prejudice) only when it is both "independent of the federal question and adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  But here, the DCCA's decision was inextricably bound up with federal law: Mr. Roseboro supposedly failed to provide enough facts *about his federal IAAC claim*.  *See* A1542.  This court must "presume that there is no independent and adequate state ground for a state court decision when the decision fairly appears … to be interwoven with federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion."  *Coleman*, 501 U.S. at 735.  Thus, because the DCCA's decision "fairly appeared … to be interwoven with" Mr. Roseboro's federal claim, and "did not clearly and expressly rely on an independent and adequate state ground, [this Court] may address the petition."  *Id.*

[9] The government notes that, where a state court adjudicates a claim on the merits but provides no reasoning, a habeas court may grant relief only where there is "no reasonable basis for the state court to deny relief."  *Richter*, 562 U.S. at 98.  Here, however, the DCCA *did* provide a reason for its ruling: Mr. Roseboro supposedly failed to "carr[y] the heavy burden of setting forth in detail, chapter and verse, a persuasive, factually based argument for recalling the mandate."  A1541.  Thus, if the Court believes (contrary to Mr. Roseboro's argument) that this constitutes an adjudication "on the merits," the Court must assess whether *this particular reason* for denying Mr. Roseboro's IAAC claim was unreasonable.

## CONCLUSION

For these reasons, this Court should expand the record, hold an evidentiary hearing, and grant Mr. Roseboro's habeas petition.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/ Julia Fong Sheketoff
Julia Fong Sheketoff
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500

# Addendum

# BURKA AND ENGLE, P.L.L.C.
### ATTORNEYS AT LAW
SUITE 900 SOUTH
601 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20004

(202) 574-0400

SHARON L. BURKA (DC & MD BARS)
THOMAS D. ENGLE (DC & VA BARS)

January 28, 2015

Raymond Roseboro
Inmate #50029-007
USP Big Sandy
Box 2068
Inez, KY 41224

Re: *United States v. Raymond Roseboro*
Case No. 2010-CF1-23156

Dear Mr. Roseboro:

Enclosed please find a copy of the government's brief which was filed in the D.C. Court of Appeals.

As we previously discussed, the primary flaw in your case was the alibi evidence. The government discusses that at pages 39 - 40.

We can expect a decision from the court in approximately six to 18 months. As soon as we hear anything, I will let you know. If you have any questions in the meantime, please feel free to give me a call.

Yours very truly,

Thomas D. Engle

TDE:wp

ADD1

BURKA AND ENGLE, P.L.L.C.
ATTORNEYS AT LAW
SUITE 900 SOUTH
601 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20004

(202) 574-0400

SHARON L. BURKA (DC & MD BARS)
THOMAS D. ENGLE (DC & VA BARS)

February 16, 2015

Raymond Roseboro
Inmate #50029-007
USP Big Sandy
Box 2068
Inez, KY 41224

    Re: *United States v. Raymond Roseboro*
       Case No. 2010-CF1-23156

Dear Mr. Roseboro:

    I received your letter postmarked February 5, 2015, inquiring as to the status of your appeal. I assume your letter crossed in the mail with my letter to you, providing you with a copy of the governments brief.

    If you have any questions, please feel free to contact me.

                    Yours very truly,

                    Thomas D. Engle

TDE:wp

ADD2

BURKA AND ENGLE, P.L.L.C.
ATTORNEYS AT LAW
SUITE 900 SOUTH
601 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20004

(202) 574-0400

SHARON L. BURKA (DC & MD BARS)
THOMAS D. ENGLE (DC & VA BARS)

April 12, 2015

Raymond Roseboro
Inmate #50029-007
USP Big Sandy
Box 2068
Inez, KY 41224

Re: *United States v. Raymond Roseboro*
Case No. 2010-CF1-23156

Dear Mr. Roseboro:

I have received notice that your appeal has been set on summary calendar. This is not a good sign as it usually, but not always, means that the Court of Appeals intends to affirm your conviction.

I will provide you with a copy of the decision as soon as it is issued.

If you have any questions, please feel free to contact me.

Yours very truly,

Thomas D. Engle

TDE:wp

ADD3

BURKA AND ENGLE, P.L.L.C.

ATTORNEYS AT LAW

SUITE 900 SOUTH

601 PENNSYLVANIA AVENUE, N.W.

WASHINGTON, D.C. 20004

(202) 574-0400

SHARON L. BURKA (DC & MD BARS)
THOMAS D. ENGLE (DC & VA BARS)

July 25, 2015

Raymond Roseboro
Inmate #50029-007
USP Big Sandy
Box 2068
Inez, KY 41224

Re: *United States v. Raymond Ro* ⋯
    Case No. 2010-CF1-23156

Dear Mr. Roseboro:

Your case is currently submit⋯ ⋯ D.C. Court of Appeals. This means that the only step left is for the court to issue a dec⋯ ⋯ will, of course, inform you immediately when that occurs.

If you have any questions, pl⋯ ⋯ free to contact me.

Yours very truly,

Thomas D. Engle

TDE:wp

ADD4

**BURKA AND ENGLE, P.L.L.C.**

ATTORNEYS AT LAW

SUITE 900 SOUTH

601 PENNSYLVANIA AVENUE, N.W.

WASHINGTON, D.C. 20004

(202) 574-0400

SHARON L. BURKA (DC & MD BARS)
THOMAS D. ENGLE (DC & VA BARS)

September 3, 2015

Raymond Roseboro
Inmate #50029-007
USP Big Sandy
Box 2068
Inez, KY 41224

Re: *United States v. Raymond Roseboro*
    Case No. 2010-CF1-23156

Dear Mr. Roseboro:

Ihave received your letter dated August 24, 2015. Enclosed please find a CD of the transcripts in your case. This is the format in which I received the transcripts.

Also,, pursuant to your request, I have sent the enclosed letter to Mr. Rudasill.

If you have any questions, please feel free to contact me.

Yours very truly,

Thomas D. Engle

TDE:wp

ADD5

## BURKA AND ENGLE, P.L.L.C.

ATTORNEYS AT LAW

SUITE 900 SOUTH

601 PENNSYLVANIA AVENUE, N.W.

WASHINGTON, D.C. 20004

(202) 574-0400

SHARON L. BURKA (DC & MD BARS)
THOMAS D. ENGLE (DC & VA BARS)

September 3, 2015

James Rudasill, Esquire
717 D Street, N.W., Suite 310
Washington, D.C. 20004

   Re: *United States v. Raymond Roseboro*
      Case No. 2010-CF1-23156
      Appeal No. 13-CF-459

Dear Mr. Rudasill:

     Mr. Roseboro has asked that I convey his request that you provide him with photos and mail matter in his trial file. His address is: Inmate #50029-007, USP Big Sandy, Box 2068, Inez, KY 41224.

Yours very truly,

Thomas D. Engle

TDE:wp

cc: Raymond Roseboro

## BURKA AND ENGLE, P.L.L.C.
### ATTORNEYS AT LAW
SUITE 900 SOUTH
601 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20004

(202) 574-0400

SHARON L. BURKA (DC & MD BARS)
THOMAS D. ENGLE (DC & VA BARS)


February 4, 2016


Raymond Roseboro
Inmate #50029-007
USP Big Sandy
Box 2068
Inez, KY 41224

Re: *United States v. Raymond Roseboro*
    Case No. 2010-CF1-23156

Dear Mr. Roseboro:

Please excuse the delay in obtaining the court's opinion – we had a weather emergency (snow) that closed the court for several days. The opinion was not in your case file, which probably confirms that they never mailed it to me rather than it got lost in the mail.

In any event, they were able to obtain the electronic version which I have enclosed. Unfortunately, the court affirmed your conviction based primarily on your trial counsel's failure to request any specific action and the lack of demonstrable prejudice from the trial judge's lack of further action.

Yours very truly,

Thomas D. Engle

TDE:wp


ADD7

DISTRICT OF COLUMBIA COURT OF APPEALS         NAMP

RAYMOND ROSEBORO                          No. 13- CF- 459

                              
V.

UNITED STATES OF AMERICA

                    RULE 26. (b) EXTENDING TIME

    Comes Now, Pro se, defendant Raymond Roseboro, here by moves the
court pursuant to Rule 26 (b) Extending Time to file RECALL MANDATE.
D.C. Ct. App. R. 26 (b) allows the court to either extend the time
prescribed by these rules to perform any act or permit an act to be
done after that time expires.  In which ever of those two categories
appellant's motion falls, he is required to show good cause.  83 A.3d
369 Long v. United States (D.C. 2013).

    My appeal counsel, Thomas D. Engle sent me an letter stating the
court affirmed my conviction on May 29, 2015, as dated on the
Memorandum Opinion and Judgment notice.  But the letter he sent was
dated February 4, 2016 with the time well lapsed to file my Recall
Mandate motion.  As enclosed in the letter, Counsel apolygizes for the
delay in obtaining the court's opinion.  And gave the excuse due to a
weather emergency (snow) that closed the court for several days.

    If the court may grant an Extension so I can file my Recall Mandate
motion, I would be greatly appreciative where Justice is due.

                              Raymond Roseboro
                              Brad Rowh         #50029-007
                              F.C.I. McDowell
                              Welch, Wv 24801


Enclosed is copies of letter from counsel and MOJ order post dated.

Served by DCCA 4·1·16

                              ADD8

# BURKA AND ENGLE, P.L.L.C.
ATTORNEYS AT LAW
SUITE 900 SOUTH
601 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20004
—
(202) 574-0400

SHARON L. BURKA (DC & MD BARS)
THOMAS D. ENGLE (DC & VA BARS)


February 4, 2016


Raymond Roseboro
Inmate #50029-007
USP Big Sandy
Box 2068
Inez, KY 41224

    Re: *United States v. Raymond Roseboro*
       Case No. 2010-CF1-23156

Dear Mr. Roseboro:

    Please excuse the delay in obtaining the court's opinion – we had a weather emergency (snow) that closed the court for several days.  The opinion was not in your case file, which probably confirms that they never mailed it to me rather than it got lost in the mail.

    In any event, they were able to obtain the electronic version which I have enclosed. Unfortunately, the court affirmed your conviction based primarily on your trial counsel's failure to request any specific action and the lack of demonstrable prejudice from the trial judge's lack of further action.

                                Yours very truly,

                                  Thomas D. Engle


TDE:wp


ADD9

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CF-459

RAYMOND ROSEBORO, APPELLANT,

v.

UNITED STATES, APPELLEE.



FILED

MAY 29 2015

DISTRICT OF COLUMBIA
COURT OF APPEALS

Appeal from the Superior Court
of the District of Columbia
(CF1-23156-10)

(Hon. Russell F. Canan, Trial Judge)

(Submitted May 21, 2015                    Decided May 29, 2015)

Before GLICKMAN and FISHER, *Associate Judges*, and STEADMAN, *Senior Judge*.

## MEMORANDUM OPINION AND JUDGMENT

PER CURIAM:  Appellant was convicted of first-degree murder and related weapons charges.  On appeal, his only contention is that the trial judge failed to take action after learning that a juror had been asleep during the presentation of evidence in the government's case-in-chief.  When the issue came up, however, appellant discouraged the judge from swapping the juror with an alternate and assented to the judge's decision to "keep monitoring" the situation.  Although counsel suggested that the judge inquire of the juror at the end of the day, he did not pursue that request.  Thereafter, at the close of the trial, just before the alternates were excused, defense counsel was asked whether he had any concerns about the juror.  Counsel agreed with the court and the prosecutor that the juror had been "fine," raised no concerns about the juror's attention to the evidence or ability to deliberate, and requested no judicial inquiry or other action.  By thus expressly declining to object to the sleeping juror or to request the judge to undertake further inquiry or other action, appellant waived any claim that the judge erred in failing to

2

respond appropriately to the situation.[1]  "Nor, in the absence of an objection at trial, can appellant show any likelihood that he was prejudiced by the judge's failure to take further action on the sleeping juror report."[2]

The judgment of the Superior Court is hereby affirmed.

ENTERED BY DIRECTION OF THE COURT:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court

Copies to:

Honorable Russell F. Canan

Thomas D. Engle, Esq.
601 Pennsylvania Avenue, NW – Suite 900S
Washington, DC 20004

Elizabeth Trosman, Esq.
Assistant United States Attorney

---

[1] *See Hankins v. United States*, 3 A.3d 356, 358 n.1 (D.C. 2010); *see also Brown v. United States*, 627 A.2d 499, 508 (D.C. 1993) ("[A] defendant may not take one position at trial and a contradictory position on appeal.").

[2] *Hankins*, 3 A.3d at 358 n.1.

---





FILED
APR 0 6 2016
DISTRICT OF COLUMBIA
COURT OF APPEALS

# District of Columbia
# Court of Appeals

**No. 13-CF-459**

RAYMOND R. ROSEBORO,
                        Appellant,                    **2010 CF1 23156**
      v.

UNITED STATES,
                        Appellee.

BEFORE:   Glickman and Fisher, Associate Judges, and Steadman, Senior Judge.

## ORDER

On consideration of appellant's motion for an extension of time to file a motion to recall the mandate, it is

ORDERED that appellant's motion is granted to the extent that any motion to recall mandate shall be filed no later than 45 days from the date of this order.

## PER CURIAM

Copies to:

Raymond R. Roseboro                        Elizabeth Trosman, Esquire
Fed # 50029-007                               Assistant U.S. Attorney
McDowell FCI
PO Box 1009
Welch, WV 24801

cml

ADD13