**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

RAYMOND R. ROSEBORO,

       Petitioner,

v.

BARBARA RICKARD,

       Respondent.

Civ. Action No. 19-2355
(EGS)

**<u>MEMORANDUM OPINION</u>**

## I.   Introduction

Mr. Raymond Roseboro ("Mr. Roseboro" or "Petitioner") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). *See* Pet'r's *Pro Se* Mot. Habeas Corpus Relief Pursuant to 28 U.S.C. § 2254 ("Pet."), ECF No. 3.[1] He challenges his 2013 conviction by a jury in the Superior Court of the District of Columbia ("Superior Court") on murder and firearms offenses. *See id.* at 6. Specifically, he alleges an ineffective-assistance-of-appellate-counsel ("IAAC") claim. *See id.* at 9-13.

---

[1] When citing electronic filings throughout this Opinion, the Court refers to the ECF header page numbers, not the page numbers of the filed documents.

Pending before the Court are Mr. Roseboro's *Pro Se* Motion for Habeas Corpus Relief Pursuant to 28 U.S.C. § 2254, *see* ECF No. 3, supplemented by Petitioner's Supplemental Brief in Support of Petition for Habeas Corpus, *see* ECF No. 34; and Mr. Roseboro's Motion Expand the Record and for an Evidentiary Hearing, *see* ECF No. 33. Upon careful consideration of the parties' submissions, the applicable law, and the entire record herein, the Court **DENIES** Mr. Roseboro's Petition, *see* ECF No. 3; and **DENIES** Mr. Roseboro's Motion to Expand the Record and for an Evidentiary Hearing, *see* ECF No. 33.

## II.  Background

### A.  Factual

The Court reviews each stage of the proceedings in Mr. Roseboro's case below.

#### 1.  The Trial Proceedings

On September 7, 2011, Mr. Roseboro was charged by indictment in Superior Court on five counts in connection with the 2010 death of Prince Okorie: (1) murder in the first degree while armed (D.C. Code §§ 22-2101, 22-4502); (2) possession of a firearm during a crime of violence or dangerous offense (D.C. Code § 22-4504(b)); (3) carrying a pistol without a license (outside home or place of business) (D.C. Code § 22-4504(a)(2)); (4) possession of an unregistered firearm (D.C. Code § 7-

2502.01); and (5) unlawful possession of ammunition (D.C. Code § 7-2506.01(3)). *See* App., ECF No. 34-1 at 1601-03.

The Government tried Mr. Roseboro three times on these charges. At all three trials, he was represented by counsel. *See id.* at 3. The first two trials resulted in deadlocked juries, and the court declared a mistrial each time. *See id.* at 23, 35. The Government obtained a conviction in a third trial. *Id.* at 43. On February 6, 2013, the jury returned a guilty verdict on all counts, and he was sentenced to 40 years of incarceration and five years of supervised release, on April 10, 2013. *Id.* at 43, 45-46.

### 2.   The Appellate Proceedings

Mr. Roseboro timely appealed his conviction. *Id.* at 1711-15. New counsel was appointed to represent him on this direct appeal. *See id.* at 1445. Mr. Roseboro, through counsel, raised a single claim: that the Superior Court "[e]rred by [t]aking [n]o [a]ction" to respond to reports from the trial attorneys that Juror 5 had fallen asleep during parts of the third trial. *Id.* at 1463.

On May 29, 2015, the District of Columbia Court of Appeals ("D.C. Court of Appeals") affirmed Mr. Roseboro's conviction. *Id.* at 1529-30. The court rejected Mr. Roseboro's claim in a single-sentence per curiam opinion. *Id.* The mandate issued on June 22, 2015. *Id.* at 49.

### 3.   The Post-Conviction Proceedings

On April 1, 2016, Mr. Roseboro filed a *pro se* motion for an extension of time to file a motion to recall the mandate.[2] *Id.* The D.C. Court of Appeals granted the motion and provided him with an additional 45 days to file his motion to recall the mandate. *Id.*

Mr. Roseboro filed his *pro se* motion to recall the mandate on May 6, 2016. *Id.* at 1531. In this motion, he raised a new claim: ineffective assistance of appellate counsel for failure to raise the issue of ineffective assistance of trial counsel based on the latter attorney's handling of Juror 5's misconduct. *See id.* at 1531-40. On October 19, 2016, the D.C. Court of Appeals denied Mr. Roseboro's motion to recall the mandate in a single-sentence per curiam order. *Id.* at 1543.

Mr. Roseboro thereafter filed this Petition in the District Court for the Southern District of West Virginia. *See* ECF No. 1. In the Petition, he alleges an IAAC claim for relief. *Id.*; Pet., ECF No. 3. The Government moved to dismiss the Petition on November 9, 2018. *See* Resp't's Mot., ECF No. 13. The court referred the motion to Magistrate Judge Cheryl A. Eifert for resolution. *See* Docket for Civ. Action No. 19-2355. On February

---

[2] A motion to recall the mandate is the required mechanism for raising an IAAC claim in the D.C. Courts. *See Williams v. Martinez,* 586 F.3d 995, 997 (D.C. Cir. 2009).

15, 2019, Magistrate Judge Eifert recommended that the court transfer the action to the District Court for the District of Columbia and deny the Government's Motion to Dismiss as moot. *See* Proposed Findings & Recommendations, ECF No. 15 at 29. Judge John T. Copenhaver adopted the first recommendation and transferred the case to the District Court for the District of Columbia. *See* Mem. Op. & Order, ECF No. 17; J. Order, ECF No. 18.

**B.    Procedural**

Upon transfer to this Court, counsel for Mr. Roseboro entered her appearance. *See* Notice, ECF No. 22. On February 14, 2020, the Court entered the briefing schedule proposed by the parties. *See* Minute Order (Feb. 14, 2020). Thereafter, on May 25, 2021, Mr. Roseboro submitted a supplemental brief in support of his Petition. *See* Pet'r's Suppl. Br. in Supp. of Pet. Habeas Corpus ("Pet'r's Suppl. Br."), ECF No. 34. That same day, he also filed a motion to expand the record and for an evidentiary hearing. *See* Pet'r's Mot. Expand Record & For Evidentiary Hearing ("Pet'r's Mot."), ECF No. 33. The Government submitted its response on February 14, 2022, *see* Resp't's Opp'n Pet'r's Pet. Writ Habeas Corpus Pursuant 28 U.S.C. § 2254, & Pet'r's Mot. Expand Record & Evidentiary Hearing ("Resp't's Opp'n"), ECF No. 39; and Mr. Roseboro replied on August 15, 2022, *see* Pet'r's

Reply Br. in Supp. of Pet. Habeas Corpus ("Pet'r's Reply"), ECF No. 43. The motions are now ripe and ready for adjudication.

## III. Legal Standard

### A.   Petition for Writ of Habeas Corpus

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244, governs Mr. Roseboro's Petition for Writ of Habeas Corpus, *see* ECF Nos. 1, 3. Section 2254, as amended by AEDPA, provides that "a person in custody under the judgment of a D.C. court may petition for a writ of habeas corpus on the ground that he is being held 'in violation of the Constitution or laws or treaties of the United States.'" *Johnson v. Wilson*, 960 F.3d 648, 652 (D.C. Cir. 2020) (quoting 28 U.S.C. § 2254(a)). If a state court has adjudicated a particular claim on the merits, a federal court may grant habeas relief only if the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A federal court must use this highly deferential standard only when the state court has adjudicated the merits of a petitioner's habeas claim—when the state court has issued a

judgment upon "hear[ing] and evaluat[ing] the evidence and the parties' substantive arguments." *Johnson v. Williams*, 568 U.S. 289, 302 (2013) (emphasis omitted) (quoting Black's Law Dictionary 1199 (9th ed. 2009)). If the state court has not adjudicated the claim on the merits, the federal court reviews the habeas petition *de novo*, and the principles that ordinarily animate AEDPA deference to a state court's judgment—comity, finality, and federalism—dissipate. *See Winston v. Kelly*, 592 F.3d 535, 555 (4th Cir. 2010).

**B. Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on an ineffective assistance claim, a defendant must show both deficient performance by his attorney and prejudice. *Strickland*, 466 U.S. at 687. *Strickland* requires a party claiming ineffective assistance of trial counsel to show: (1) that "counsel's representation fell below an objective standard of reasonableness . . . [measured] under prevailing professional norms," (the performance prong); and (2) that the "deficiencies in counsel's performance . . . [were] prejudicial to the defense" (the prejudice prong). *Id.* at 668, 687-88, 692. To establish deficient performance, the moving party must show "specific errors by trial counsel." *United States v. Cronic*, 466 U.S. 648, 666 (1984). To establish prejudice, the moving party

7

must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Judicial scrutiny of counsel's performance must be highly deferential," and defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The standard for evaluating claims of ineffective assistance of appellate counsel is the same as that for evaluating claims of ineffective assistance of trial counsel. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000); *United States v. Agramonte*, 366 F. Supp. 2d 83, 86 (D.D.C. 2005). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Robbins*, 528 U.S. at 288; *see also Agramonte*, 366 F. Supp. 2d at 86 ("It is settled that a criminal defendant has no constitutional right to have appellate counsel raise every nonfrivolous issue that the defendant requests."). Although it is "possible" to bring a *Strickland* claim "based on counsel's failure to raise a particular claim" on appeal, "it is difficult to demonstrate that counsel was incompetent" on that ground. *Robbins*, 528 U.S. at 288.

## IV.  Analysis

### A.    The Petition is Not Time-Barred

A petition for writ of habeas corpus under Section 2254 is subject to a one-year statute of limitations. *Wright v. Wilson*, 930 F. Supp. 2d 7, 10 (D.D.C. 2013) (citing 28 U.S.C. § 2244(d)(1)). The Government argues that the Petition is untimely by at least 41 days. Resp't's Opp'n, ECF No. 39 at 21. Mr. Roseboro challenges this calculation, *see* Pet'r's Reply, ECF No. 43 at 13 n.4; but does not clearly argue that he filed the Petition within the statutory timeframe, *see generally id.* at 5-15. Instead, he contends that: (1) the Government "forfeited [any] timeliness defense" by not raising it in any earlier filing, *id.* at 9; and (2) he is entitled to equitable tolling, *see id.* at 10-15. For the reasons that follow, the Court concludes that the Petition is not time-barred.

### 1.    The Court Will Consider the Government's Timeliness Defense

The parties first dispute whether the Court may entertain the Government's argument that Mr. Roseboro's Petition is untimely. *See* Resp't's Opp'n, ECF No. 39 at 19 n.16.

The parties agree that the Government did not intentionally waive its timeliness defense. *See id.* at 20 n.16; Pet'r's Reply, ECF No. 43 at 8. Nevertheless, Mr. Roseboro asserts that the Government "forfeited" the defense by not raising the issue in

9

its Motion to Dismiss. Pet'r's Reply, ECF No. 43 at 8 (emphasis omitted). He argues that a timeliness defense is "ordinarily" forfeited "'in civil litigation . . . if not raised in a defendant's answer or in an amendment thereto.'" *Id.* at 7-8 (quoting *Day v. McDonough*, 547 U.S. 198, 202 (2006)). Here, he contends, Magistrate Judge Eifert directed the Government to include any defense in its response to the Petition. *See id.* at 6. Specifically, that order directed the Government to "show[] cause . . . why the relief sought by [Mr. Roseboro] should not be granted"; "respond to the issues raised"; and "include any available court or other records that would facilitate determination of the issues" in its response to the Petition. *Id.* (emphasis omitted) (quoting Order, ECF No. 11 at 1). Mr. Roseboro argues that, despite this directive, the Government addressed only the merits of the Petition; "did not make any argument that [his] petition was untimely"; and "did not file any of [his] state court filings—which would have been necessary for the court to assess the timeliness of his petition." *Id.* (citing Resp't's Mot., ECF No. 13 at 4-10; Proposed Findings & Recommendations, ECF No. 15 at 6).

"Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto." *Day*, 547 U.S. at 202 (citing Fed. R. Civ. P. 8(c), 12(b), 15(a)). This forfeiture rule is not

10

inconsistent with the Rules Governing Section 2254 Cases. *Wood v. Milyard*, 566 U.S. 463, 475 (2012); *cf.* Rules Governing Section 2254 Cases in the United States District Courts, R. 12. Nevertheless, binding precedent makes clear that district courts may consider the timeliness of a habeas petition under certain circumstances despite the government's failure to raise the issue in the first instance.

In *Day*, the Supreme Court considered whether a federal district court may dismiss a habeas petition as untimely in cases where the government fails to raise a timeliness defense or erroneously concedes that the petition is timely. *See Day*, 547 U.S. at 205. In that case, the magistrate judge recognized that the government had miscalculated the tolling time, ordered the petitioner to show cause why his petition should not be dismissed as untimely, and recommended dismissal on this ground—a recommendation the district court adopted. *See id.* at 204. The Supreme Court ultimately held that "district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition." *Id.* at 209. In so holding, the Court imposed two conditions on a federal court's ability to consider the timeliness of a habeas petition *sua sponte*. *See id.* at 210-11. First, the Court mandated that federal courts provide "fair notice and opportunity" for both parties "to present their positions." *Id.* at 210 (citing *Acosta*

11

*v. Artuz*, 221 F.3d 117, 124-25; (2d Cir. 2000); *McMillan v. Jarvis*, 332 F.3d 244, 250 (4th Cir. 2003). Second, the Court required that federal courts raising the timeliness issue *sua sponte* "assure [themselves] that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and 'determine whether the interests of justice would be better served' by addressing the merits or by dismissing the petition as time barred." *Id.* (quoting *Granberry v. Greer*, 481 U.S. 129 (1987)).

Several years later, in *Wood*, the Supreme Court restated that its "precedent establishes that a court may consider a statute of limitations or other threshold bar the State failed to raise in answering a habeas petition." *Wood*, 566 U.S. at 466 (citing *Granberry*, 481 U.S. at 134; *Day*, 547 U.S. at 202). In that case, the district court asked the government twice if it planned to raise a timeliness defense, and the government twice responded "that it [would] not challenge, but [was] not conceding, the timeliness of [the] habeas petition." *Id.* at 463 (citation and internal quotation marks omitted). The Court first concluded that "courts of appeals, like district courts, have the authority—though not the obligation—to raise a forfeited timeliness defense on their own initiative," but "should reserve that authority for use in exceptional cases" and exercise "restraint" for "an issue the parties did not air below, and

therefore would not have anticipated in developing their arguments on appeal." *Id.* at 473. Holding that the appellate court had abused its discretion in considering the timeliness of the petition, *see id.* at 474; the Court explained that "a district court [may] consider the defense on its own initiative and determine whether the interests of justice would be better served by addressing the merits or by dismissing the petition as time barred"—but "[o]nly where the State does not strategically withh[o]ld the [limitations] defense or cho[o]se to relinquish it, and where the petitioner is accorded a fair opportunity to present his position," *id.* at 472 (internal quotation marks omitted) (quoting *Day*, 547 U.S. at 210-11 (quoting *Granberry*, 481 U.S. at 136)).

Given this caselaw, the Court may consider the Government's timeliness defense here so long as such consideration better serves the interests of justice.[3] The Government does not explain how the interests of justice would be served here. *See generally* Resp't's Opp'n, ECF No. 39.[4] In his reply brief, Mr.

---

[3] The Government did not deliberately waive this defense, *see supra*; and Mr. Roseboro has had a fair opportunity to present his position in his supplemental reply brief, *see* Pet'r's Reply, ECF No. 43 at 5-15.

[4] The Government contends that the Court may not dismiss the Petition as time-barred "unless the government affirmatively indicates a knowing decision to 'strategically withhold the limitations defense or choose to relinquish it,' and thus expressly makes a "deliberate waiver of a limitations defense." Resp't's Opp'n, ECF No. 39 at 19 n.16 (quoting *Wood*, 566 U.S. at

Roseboro argues that "[i]t is not in the interests of justice" to bar the Petition because: (1) the parties already briefed the merits of the case "on the assumption that the petition was timely filed"; (2) he was delayed in filing for "reasons outside [his] control"; and (3) the circumstances supporting equitable tolling also counsel against dismissing the Petition as time-barred. Pet'r's Reply, ECF No. 43 at 9-10. This argument is not persuasive. The caselaw makes clear that the timeliness defense "'implicat[e] values beyond the concerns of the parties.'" *Id.* at 205-06 (quoting *Acosta*, 221 F.3d at 123 ("The AEDPA statute of limitation promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time.")).

Moreover, the Court concludes that these other institutional values counsel in favor of permitting the timeliness defense. First, consideration here accords with "the principle of party presentation basic to our adversary system." *Wood*, 566 U.S. at 472 (citing *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008)). The Government failed to raise the

---

472-73 (alterations and internal quotation marks omitted)). As explained *supra*, the caselaw is not so rigid and instead permits courts to consider timeliness under other circumstances as well.

issue in its Motion to Dismiss. *See* Resp't's Mot., ECF No. 13. This Court permitted both parties to submit supplemental briefs after the case was transferred and did not limit arguments to the merits of the case, *see* Minute Order (Feb. 14, 2020); despite Mr. Roseboro's assumptions otherwise, *see* Pet'r's Reply, ECF No. 43 at 9. In this way, the instant case adheres more closely to the principle of party presentation than did *Day*, where the magistrate judge specifically ordered the habeas petitioner to show cause why his petition should not be dismissed as untimely. *See Day*, 547 U.S. at 202.

Second, the Court may consider the defense without discounting the judicial resources expended by another court. Magistrate Judge Eifert made two recommendations in her Proposed Findings and Recommendations: (1) that the court transfer the action to the District Court for the District of Columbia; and (2) that the court deny the Government's Motion to Dismiss as moot. *See* Proposed Findings & Recommendations, ECF No. 15 at 29. Judge Copenhaver adopted only the first recommendation and left to this Court the determination of the Motion to Dismiss. *See* Mem. Op. & Order, ECF No. 17; J. Order, ECF No. 18. This Court is, of course, not bound by Magistrate Judge Eifert's recommendations.

Third, judicial economy is better promoted by the Court considering the Government's timeliness defense now. The Supreme

Court has clearly established that federal courts—including federal appellate courts—may raise the issue of timeliness *sua sponte*. If timeliness is indeed an issue that bars further consideration of Mr. Roseboro's Petition, then judicial resources are better conserved by the Court addressing the issue now rather than waiting for another court to weigh in at a later date.

Accordingly, the Court concludes that it may consider the Government's timeliness defense.

### 2.   Mr. Roseboro Filed the Petition Too Late

The Government argues that the Petition is untimely by at least 41 days. Resp't's Opp'n, ECF No. 39 at 21. Mr. Roseboro appears to dispute[5] this point in his supplemental reply brief. *See* Pet'r's Reply, ECF No. 43 at 13 n.4.

Habeas petitions under Section 2254 are subject to a one-year statute of limitations. *Wright*, 930 F. Supp. 2d at 10 (citing 28 U.S.C. § 2244(d)(1)). The limitations period begins to run "from the latest of": (1) the date a judgment becomes final "by the conclusion of direct review or the expiration of the time for seeking such review"; (2) the date when "the impediment to filing an application . . . is removed, if the

---

[5] Mr. Roseboro originally argued that his Petition is timely. *See* Pet'r's Pro Se Mot. Habeas Corpus Relief Pursuant 28 U.S.C. § 2254, ECF No. 3 at 4. He has since abandoned that argument. *See generally* Pet'r's Reply, ECF No. 39.

applicant was prevented from filing by such State action"; (3) the date when "the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"; or (4) the date when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1). Although AEDPA imposes a "tight time line," *Mayle v. Felix*, 545 U.S. 644, 662 (2005); "[s]tatutory tolling pauses the clock while 'a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending,'" *Blount v. United States*, 860 F.3d 732, 737 (D.C. Cir. 2017) (quoting 28 U.S.C. § 2244(d)(2)).

The parties do not dispute the date on which the limitations period began to run: August 27, 2015. The D.C. Court of Appeals affirmed Mr. Roseboro's conviction on direct appeal on May 29, 2015. App., ECF No. 34-1 at 1529-30. Mr. Roseboro then had 90 days to file a petition for a writ of certiorari. *See* Sup. Ct. R. 13 (providing that the time for petitioning for a writ of certiorari expires ninety days after the denial of rehearing). Because that time expired without Mr. Roseboro filing such a petition, the judgment became final on August 27, 2015. *See Clay v. United States*, 537 U.S. 522, 527 (2003)

17

("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."); *Blount*, 860 F.3d at 737 (explaining that the "limitations period began to run . . . when time expired for seeking Supreme Court review in the direct appeal of his conviction").[6]

It is also undisputed that statutory tolling paused the clock before the limitations period concluded. "[A] motion to recall the mandate raising an IAAC claim is a form of local 'post-conviction or other collateral review.'" *Blount*, 860 F.3d at 740 n.4 (quoting 28 U.S.C. § 2244(d)(2)). As a result, the clock stops when the petitioner files a motion to recall the mandate with the D.C. Court of Appeals. *See Evans v. United States*, No. 1:17-CV-01731 (KBJ), 2020 WL 3250730, at *6 (D.D.C. June 15, 2020). Here, Mr. Roseboro filed his *pro se* motion to recall the mandate on May 6, 2016. *See* App., ECF No. 34-1 at 1531.[7] The clock therefore stopped on that date. Mr. Roseboro

---

[6] The D.C. Court of Appeals' denial of Mr. Roseboro's motion to recall the mandate did not change the date on which the judgment became final. *See Blount*, 860 F.3d at 737, 740.

[7] The Court agrees with the Government's assessment that Mr. Roseboro's motion constitutes a "properly filed application" under 28 U.S.C. § 2244(d)(2). *See Freeman v. Page*, 208 F.3d 572, 576 (7th Cir. 2000) ("Whether a collateral attack is 'properly filed' can be determined in a straightforward way by looking at how the state courts treated it. If they considered the claim on

disputes this conclusion, arguing that the prisoner-mailbox rule requires that tolling began on the date that he deposited his motion in the prison mail system. *See* Pet'r's Reply, ECF No. 43 at 13 n.4. The Court agrees that the prisoner-mailbox rule generally applies to the *pro se* filings in this case. *See Houston v. Lack*, 487 U.S. 266, 276 (1988). However, nothing in the record indicates when Mr. Roseboro filed the motion to recall the mandate, so the Court must rely on the date that the D.C. Court of Appeals received the motion.

The parties appear to agree that statutory tolling concluded on October 19, 2016 because the D.C. Court of Appeals denied Mr. Roseboro's motion to recall the mandate on that date. *See Blount*, 860 F.3d at 737; *Evans*, 2020 WL 3250730, at *6.

Given this timeline, Mr. Roseboro was required to file his habeas petition no later than February 9, 2017. He did not submit the Petition until March 22, 2017—41 days after the limitations period expired. Because Mr. Roseboro did not file the Petition until March 22, 2017,[8] *see* Mr. Roseboro's Petition

---

the merits, it was properly filed; if they dismissed it for procedural flaws . . . then it was not properly filed.").

[8] The Petition was not docketed until March 28, 2017, but Mr. Roseboro signed and dated it on March 22, 2017. *See* Mr. Roseboro's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, ECF No. 1. The Court considers March 22, 2017 to be the filing date because of Mr. Roseboro's incarceration and *pro se* status at the time of filing. *See Lack*, 487 U.S. at 276.

for Writ of Habeas Corpus under 28 U.S.C. § 2254, ECF No. 1; the Petition is untimely.

### 3.   Equitable Tolling is Appropriate

Notwithstanding the above calculation, Mr. Roseboro next argues that equitable tolling is warranted here. *See* Pet'r's Reply, ECF No. 43 at 10-15.

The limitations period is not jurisdictional, so it "is subject to equitable tolling." *Holland v. Florida*, 560 U.S. 631, 649 (2010). This remedy is available where the habeas petitioner shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (citation and internal quotation marks omitted). Given this standard, equitable tolling should "be employed 'only sparingly,'" *United States v. Cicero*, 214 F.3d 199, 203 (D.C. Cir. 2000) (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)); and therefore "has been applied in the context of the AEDPA only if 'extraordinary circumstances beyond a prisoner's control ma[d]e it impossible to file a petition on time,'" *id.* (quoting *Calderon v. U.S. Dist. Ct.*, 128 F.3d 1283, 1288 (9th Cir. 1997)).

The parties first dispute whether attorney misconduct can be an extraordinary circumstance. Mr. Roseboro contends that "'[p]rofessional misconduct' can rise to 'egregious behavior and create an extraordinary circumstance that warrants equitable

tolling.'" Pet'r's Reply, ECF No. 43 at 10 (quoting *Holland*, 560
U.S. at 651). The Government rejects the notion that even gross
or egregious attorney negligence may qualify as an extraordinary
circumstance. *See* Resp't's Opp'n, ECF No. 39 at 26 (quoting
*Clemons v. Commissioner*, 967 F.3d 1231, 1242 (11th Cir. 2020)).
Instead, the Government asserts that "a petitioner must show
complete 'abandonment' by counsel or another equally
'extraordinary circumstance' such as 'bad faith, dishonesty,
divided loyalty, [or] mental impairment.'" *Id.* (quoting *Cadet v.
Fla. Dep't of Corrs.*, 853 F.3d 1216, 1236 (11th Cir. 2017)).

The caselaw on this point is unclear. In *Holland*, the
Supreme Court rejected as "too rigid" a standard that "attorney
conduct that is grossly negligent can never warrant tolling
absent bad faith, dishonesty, divided loyalty, mental impairment
or so forth on the lawyer's part." *Holland*, 560 U.S. at 649.
Instead, it held that, "at least sometimes, professional
misconduct that fails to meet [that] standard could nonetheless
amount to egregious behavior and create an extraordinary
circumstance that warrants equitable tolling." *Id.* at 651.
Although the Court declined to announce a rule to govern cases
involving attorney misconduct, it emphasized that the "exercise
of a court's equity powers . . . must be made on a case-by-case
basis," *id.* at 649-50 (quoting *Baggett v. Bullitt,* 377 U.S. 360,
375 (1964)); and that courts must be flexible while "avoiding

'mechanical rules,'" *id.* (quoting *Holmberg v. Armbrecht,* 327 U.S. 392, 396 (1946)).

The Court therefore must review the parties' arguments, the record in the case, and the allegations Mr. Roseboro raises in the declaration attached to his supplemental brief. *See id.* at 654. Mr. Roseboro argues that his appellate attorney "repeatedly promis[ed]" to inform him when the D.C. Court of Appeals issued its decision on his appeal. Pet'r's Reply, ECF No. 43 at 11 (citing ECF No. 43 at 30, 31, 34). He claims that his attorney "affirmatively misled" him when, "[n]early two months after [his] appeal had been denied, [his attorney] falsely informed [him] that [the D.C. Court of Appeals] had not yet issued its decision." *Id.* (emphasis omitted). He also claims that his attorney did not inform him that the D.C. Court of Appeals had denied his appeal until February 2016—eight months after the court had issued its decision. *Id.*

The question, then, is whether the delay in communication and the affirmative mischaracterization give rise to an extraordinary circumstance. Following the Supreme Court's example, the Court reviews the precedents cited by the parties here to "guide [its] judgment[]." *Holland*, 560 U.S. at 651. The Government points to several cases where the court held that equitable tolling was not warranted despite an attorney's failure to promptly inform the petitioner of a state court

decision. *See* Resp't's Opp'n, ECF No. 39 at 27-28 (citing *Robinson v. State Attorney for Fla.*, 808 F. App'x 894 (11th Cir. 2020); *Schlager v. Superintendent Fayette SCI*, 789 F. App'x 938 (3d Cir. 2019); *Coulter v. Kelley*, 871 F.3d 612 (8th Cir. 2017), *judgment vacated, appeal dismissed*, 876 F.3d 1112 (8th Cir. 2017); *Samo v. Keyser*, 305 F. Supp. 3d 551 (S.D.N.Y. 2018), *report and recommendation adopted*, No. 17-CV-5043(RJS), 2018 WL 4565143 (S.D.N.Y. Sept. 21, 2018)). The Court reviews the caselaw briefly.[9]

In *Robinson*, the Court of Appeals for the Eleventh Circuit held that the petitioner's attorney's misconduct was not an extraordinary circumstance. *Robinson*, 808 F. App'x at 898. The court acknowledged that the attorney's misconduct "arguably was negligent on several occasions, such as when he did not immediately notify [the petitioner] that his state habeas petition had been denied." *Id.* As Mr. Roseboro explains, though, this case is inapposite. *See* Pet'r's Reply, ECF No. 43 at 14. The record in *Robinson* established that the attorney "frequently communicated with [the petitioner] and filed necessary pleadings on his behalf throughout his representation." *Id.* at 897 (citation and internal quotation marks omitted). Mr. Roseboro represents here that his appellate attorney did not communicate

---

[9] The Court omits *Coulter* as the decision has been vacated. *See Coulter v. Kelly*, 876 F.3d 1112 (8th Cir. 2017).

a key decision for eight months and further, counsel
affirmatively mischaracterized the proceedings. *See* ECF No. 43
at 30, 31, 34. *Robinson* is thus not instructive here.

The decision by the Court of Appeals for the Third Circuit
in *Schlager* is more helpful. There, the petitioner sought to
toll two different periods: (1) the 86 days between the date
that the Supreme Court denied his petition for certiorari and
the date his attorney informed him of the denial, and (2) the 10
months between the date that his state habeas petition became
final and the date that the state supreme court informed him of
its decision. *Schlager*, 789 F. App'x at 941. As to the first
period, the court held that "counsel's 86-day silence [wa]s
merely garden-variety delay" since the petitioner still had
ample time to file and the attorney did not affirmatively
mislead him. *Id.* As to the second period, the court held that
the attorney's misconduct was an extraordinary circumstance
because the petitioner "was effectively abandoned by his
counsel." *Id.* at 942. During that period, the petitioner and his
father "repeatedly" called, wrote, and tried to meet with the
attorney, but the attorney's employees and partner informed
petitioner "that they had received no word from the court and
would advise him when they did." *Id.* at 941. The Court explained
that, "[w]here, as here, a client is 'stymied by [an attorney's]
misleading statements on matters that should have been within

24

[the attorney's] knowledge' and by the attorney's 'unresponsiveness and neglect of the case,' then 'extraordinary circumstances stood in the way of' the client's ability to file." *Id.* at 941-42 (quoting *Ross v. Varano*, 712 F.3d 784, 803 (3d Cir. 2013)).

The Government compares Mr. Roseboro's situation to the first potential tolling period in *Schlager*, but the Court concludes that the second tolling period is more analogous. As in that circumstance, Mr. Roseboro here was "stymied" by his attorney's neglect of the case—namely, his attorney's failure to check and communicate the status of Mr. Roseboro's appeal. *See* ECF No. 43 at 30, 31, 34. He was further "stymied" by his attorney's misleading statements—namely, his attorney falsely informing him that his appeal had not been decided two months after the D.C. Court of Appeals issued its denial and not correcting that communication for an additional six months. *See* ECF No. 43 at 31, 34.

The Court is mindful of the numerous decisions holding that "an attorney['s] fail[ure] to inform a client that an event has occurred triggering a limitations period . . . does not meet the threshold showing of 'extraordinary circumstances.'" *Samo*, 305 F. Supp. 3d at 559-60 (collecting cases from various courts in which attorneys failed to inform their clients of denials triggering the limitations period). However, even the *Samo* court

noted the caselaw concluding that an extraordinary circumstance exists where an attorney "affirmatively and knowingly mislead[s]" his client. *Id.* at 560 (quoting *Dillon v. Conway*, 642 F.3d 358, 362 (2d Cir. 2011) (per curiam)).

The Court also disposes of the Government's argument that the misconduct by Mr. Roseboro's appellate attorney did not prevent Mr. Roseboro from filing a timely habeas petition. *See* Resp't's Opp'n, ECF No. 39 at 27. The Government reasons that, because Mr. Roseboro's attorney informed him of the denial of his appeal on February 4, 2016, Mr. Roseboro had 371 days—more than one year—from the time his attorney informed him of the appeal decision to file his habeas petition. *Id.* at 26-27. The Government further argues that Mr. Roseboro's *pro se* motion for an extension of time to move to recall the mandate and his motion to recall the mandate demonstrate his awareness of the time limits to seek additional relief and his ability to file motions *pro se*. *Id.* at 27.

This argument is unpersuasive. As he asserts in his reply brief, Mr. Roseboro did not have more than one year to file his habeas petition. *See* Pet'r's Reply, ECF No. 43 at 12-13. Once he received his attorney's letter, he needed to draft and file his motion to recall the mandate (along with a motion for an extension of time given his attorney's delay). He then needed to wait for the D.C. Court of Appeals to issue a decision on his

motion so that he could respond to the reasons the court provided in its decision. *See* 28 U.S.C. § 2254(c), (d). Stated differently, the time involved with Mr. Roseboro's motion to recall the mandate in no way increased the number of days that he had to prepare and file his habeas petition. The Court therefore concludes that there existed an extraordinary circumstance during the period in which Mr. Roseboro's appellate attorney affirmatively misled him about the status of his direct appeal, though not during the period in which the attorney merely failed to inform Mr. Roseboro of the decision.

The equitable tolling inquiry does not end here. Mr. Roseboro must also show "that he has been pursuing his rights diligently." *Holland*, 560 U.S. at 649. Mr. Roseboro argues that he meets this standard. *See* Pet'r's Reply, ECF No. 43 at 14-15. He explains that "he regularly communicated with the [appellate] attorney about his case" to learn about the status of his appeal and request various legal materials related to his case. *Id.* at 14 (citing ECF No. 43 at 29, 32, 33). He also cites his "prompt" filings: (1) he filed for an extension of time to move to recall the mandate when he was finally informed that the D.C. Court of Appeals had denied his direct appeal, *id.* (citing ECF No. 43 at 35-39); (2) he filed his motion to recall the mandate within one month and two weeks before the deadline, *id.*; and (3) he filed the Petition here within five months, *id.* at 14-15. The

27

Government does not contest that Mr. Roseboro acted with reasonable diligence. *See generally* Resp't's Opp'n, ECF No. 39 at 25-28. The Court agrees with Mr. Roseboro that he pursued his rights diligently. *See Holland*, 560 U.S. at 653 ("The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" (citations and internal quotation marks omitted)).

Accordingly, the Court will toll the period between July 25, 2015—when Mr. Roseboro's appellate attorney falsely informed him that the D.C. Court of Appeals had not yet decided his appeal—and February 6, 2016—when his attorney informed him of the decision. *See* Pet'r's Reply, ECF No. 34 at 31, 34, 36. Mr. Roseboro's petition is therefore timely.

### B.   Section 2254(d) Deference Applies to Mr. Roseboro's Claim

Section 2254(d) "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). To that end, the statute "sets forth a highly deferential standard of review" for collateral challenges to state court judgments. *Waters v. Lockett*, 896 F.3d 559, 566 (D.C. Cir. 2018) (citing 28 U.S.C. § 2254(d)). This deference "applies only when a claim is 'adjudicated on the merits in State court proceedings.'" 28 U.S.C. § 2254(d). When a state court does not reach the merits of a claim, the court reviews

the claim *de novo*. *Waters*, 896 F.3d at 566 (citing *Cone v. Bell*, 556 U.S. 449, 472 (2009)). As a result, "very few habeas petitions are granted on the merits." *Evans v. United States*, No. 1:17-CV-01731 (KBJ), 2020 WL 3250730, at *5 (D.D.C. June 15, 2020).

Mr. Roseboro argues that he is entitled to *de novo* review because the D.C. Court of Appeals did not adjudicate his IAAC claim on the merits. *See id.* at 26-28. He contends that the D.C. Court of Appeals will not entertain an IAAC claim on the merits until it has first recalled the mandate. *See id.* at 26 (citing *Watson v. United States*, 536 A.2d 1056, 1060 (D.C. 1987) (en banc)). He further contends that the D.C. Court of Appeals will recall the mandate only if the movant satisfies a state-law requirement to "provide detailed factual support for his claim—not just 'conclusory' factual assertions, but 'chapter and verse.'" *Id.* (quoting *Watson*, 536 A.2d at 1060). Here, he continues, the D.C. Court of Appeals did not adjudicate his IAAC claim on the merits because it concluded that he failed to meet a technical, state-law requirement without considering the federal constitutional standard for IAAC claims or "the intrinsic rights and wrongs" of the case. *Id.* (quoting *Johnson*, 568 U.S. at 302).

By contrast, the Government asserts that the D.C. Court of Appeals' decision is a summary denial and that such a denial is

entitled to Section 2254(d) deference. *See* Resp't's Opp'n, ECF No. 39 at 32 (citing *Harrington v. Richter*, 562 U.S. 86, 98 (2011)). The Court agrees with this assessment. The D.C. Court of Appeals' decision is a summary decision—that is, it is a single-sentence order "unaccompanied by an opinion explaining the reasons relief has been denied." *Richter*, 562 U.S. at 98. Where, as here, a state court has denied relief on a federal claim in a summary order, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99 (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

Despite Mr. Roseboro's suggestions otherwise, the citation to *Watson* in the D.C. Court of Appeals' decision is insufficient to overcome this presumption. It is well established that a state court must be "explicit in its reliance on a procedural default," *Harris*, 489 U.S. at 264; and a citation to a case is not an explicit statement. Moreover, the caselaw supports the Government's position that *Watson* provides a merits-based standard. *See Blount*, 860 F.3d at 738 ("When a movant raises an IAAC claim through a motion to recall the mandate, the D.C. Court of Appeals first determines whether the motion has 'on [its] face sufficient merit' to justify disturbing the judgment." (quoting *Watson*, 536 A.2d at 1060)). Indeed, as the Government states, *see* Resp't's Opp'n, ECF No. 39 at 35; courts

in this district regularly apply Section 2254(d) deference to their review of orders citing *Watson*. *See Evans*, 2020 WL 3250730, at *3; ECF No. 39-1 at 2 (order by the D.C. Court of Appeals in *Evans*).

In his reply briefing, Mr. Roseboro argues that *Watson* provides a "state-law rule about the heightened *factual* showing a party must make in order to justify recalling the mandate" and that this rule "is *not* part of the federal constitutional standard governing IAAC claims." Pet'r's Reply, ECF No. 43 at 24. The Court is not persuaded by this argument because it ignores *Richter*. The D.C. Court of Appeals did not indicate that it denied Mr. Roseboro's motion based on a state-law pleading requirement. *See* App., ECF No. 34-1 at 1543. Accordingly, the Court concludes that the D.C. Court of Appeals decision was an adjudication on the merits and considers Mr. Roseboro's claim under Section 2254(d)'s deferential standard of review.

### C.   Mr. Roseboro Has Not Shown That He is Entitled to Relief

Mr. Roseboro contends that the D.C. Court of Appeals' decision to deny his motion to recall the mandate was an unreasonable application of clearly established federal law because he "is plainly entitled to relief on his IAAC claim." Pet'r's Suppl. Br., ECF No. 34 at 28-29. He asserts that his appellate counsel provided ineffective assistance because that

31

attorney did not argue that his trial counsel was constitutionally ineffective for failing "to investigate and address the situation with the juror who slept through large portions of [his] trial." *See* Pet'r's Suppl. Br., ECF No. 34 at 11. He contends that: (1) his appellate counsel's decision was "objectively unreasonable"; (2) there is a "reasonable probability" that he would have prevailed if his appellate counsel argued his trial counsel was constitutionally ineffective; (3) there is a "reasonable probability" that he would not have been convicted if his trial counsel had addressed the issue of the sleeping juror; and (4) his trial was "fundamentally unfair." *Id.*

The Court reviews Mr. Roseboro's IAAC claim under a "standard of review approaching triple deference." *Jones v. Holt*, 893 F. Supp. 2d 185, 196 (D.D.C. 2012) (petitioner "must show that enough information was available to appellate counsel suggesting trial counsel's prejudicial deficiency (under *Strickland*'*s* highly deferential standards) that appellate counsel's failure to pursue an ineffectiveness claim was itself prejudicially deficient (again under *Strickland*'*s* deferential standards), and that the D.C. Court of Appeals' determination to the contrary was not merely wrong but 'objectively unreasonable.'" (quoting *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003))). To prevail, Mr. Roseboro must demonstrate that: (1)

32

his appellate counsel's performance was deficient; and (2) his counsel's deficient performance prejudiced his appeal. *Strickland*, 466 U.S. at 687. For the reasons that follow, the Court **DENIES** Mr. Roseboro's Petition.

### 1. Mr. Roseboro Has Not Shown That His Appellate Counsel's Performance Was Deficient

Mr. Roseboro argues that his appellate counsel "performed deficiently" because he "raised only a single claim[] that the trial court failed to appropriately handle the sleeping juror" even though that claim "was an obvious loser." Pet'r's Suppl. Br., ECF No. 34 at 12. He first contends that it was unreasonable to raise this claim on appeal because his trial counsel waived the issue. *Id.* at 12-14. He explains that the D.C. Court of Appeals "'normally . . . spurn[s]'" any "'[q]uestions not properly raised and preserved,'" *id.* at 12-13 (quoting *D.D. v. M.T.*, 550 A.2d 37, 48 (D.C. 1988)) (citing *Hunter v. United States*, 606 A.2d 139, 144 (D.C. 1992)); and that "in virtually identical circumstances," the D.C. Court of Appeals held that the "'appellant . . . waived any claim that the judge abused his discretion,'" *id.* at 13 (quoting *Hankins v. United States*, 3 A.3d 356, 358 n.1 (D.C. 2010)).

The Government counters that this issue of waiver does not show that Mr. Roseboro's appellate counsel performed deficiently. *See* Resp't's Opp'n, ECF No. 39 at 45. The Court

agrees with this assessment. As the Government points out in its opposition briefing, *id.*; appellate counsel argued that trial counsel preserved the claim of trial error by raising the issue of Juror 5 sleeping during bench conferences, App., ECF No. 34-1 at 1469. In other words, appellate counsel argued that the issue had not been waived. *See id.* The D.C. Court of Appeals' determination that trial counsel waived the issue does not render appellate counsel's performance deficient. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

Mr. Roseboro next contends that it was unreasonable for his appellate counsel to argue that the trial court mishandled Juror 5 sleeping during trial because appellate counsel could have argued a "plainly stronger" issue that had not been waived: his trial counsel's mishandling of the sleeping juror. Pet'r's Suppl. Br., ECF No. 34 at 14. He asserts that this failure was "'oversight, not deliberate strategy'" because "the factual heart of the IAC [claim] . . . was the same as [that of] the claim that appellate counsel did raise." *Id.* (quoting *Payne v. Stansberry*, 760 F.3d 10, 12 (D.C. Cir. 2014)).

The Government argues that the trial record "strongly supports the presumption" that Mr. Roseboro's trial counsel "made a tactical decision" to keep Juror 5 on the jury and also shows "a reasonable basis" for that decision. *Id.* The Government further argues that the caselaw supports that "a defense counsel's choice not to seek the removal of a purportedly sleeping juror falls firmly within the realm of legitimate strategic decisions." *Id.* at 42 (citing *Ciaprazi v. Senkowski*, 151 F. App'x 62, 63 (2d Cir. 2005); *Guinyard v. Keane*, 56 F. App'x 44, 46 (2d Cir. 2003); *Fuller v. Hill*, 292 F. App'x 545, 546 (9th Cir. 2008); *State v. Yant*, 376 N.W.2d 487, 492 (Minn. App. 1985)).

In general, "only when ignored issues are clearly stronger than those presented[] will the presumption of effective assistance of counsel be overcome." *Robbins*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Given the parties' arguments and the trial record, the Court is not persuaded that an ineffective assistance of counsel claim was "clearly stronger." First, the trial record does not show that trial counsel should have pressed the issue of juror misconduct. Both parties agree and the trial record confirms that defense counsel, the prosecutor, and the trial judge knew that Juror 5 had fallen asleep when the prosecutor was presenting his case. *See* Pet'r's Suppl. Br., ECF No. 34 at 13;

Resp't's Opp'n, ECF No. 39 at 43; App., ECF No. 34-1 at 753. Nevertheless, no person identified specific instances of the juror sleeping, so it is impossible to tell "how attentive [the juror] [wa]s" during this testimony. App., ECF No. 34-1 at 753. And because there were no reports of Juror 5 sleeping during the defense's case or the government's rebuttal, there is no evidence in the record that Juror 5 falling asleep constituted "severe and pervasive" misconduct. Pet'r's Suppl. Br., ECF No. 34 at 11.

Second, the trial record strongly suggests that trial counsel made a tactical decision to not seek a hearing about Juror 5. "[S]trategic and tactical decisions," such as whether to object during trial, "are the exclusive province of the defense counsel." *Jones v. Barnes*, 463 U.S. 745, 753 n.6 (1983). Mr. Roseboro claims that trial counsel could not have made a tactical decision because the first-chair defense counsel could not see Juror 5 sleeping. *See* Pet'r's Reply, ECF No. 43 at 17; *see also* App., ECF No. 34-1 at 754 (trial counsel stated to the trial judge that he "ha[dn't] noticed it, . . . probably because . . . [his] view of [Juror 5] [wa]s blocked by the lectern"). Even so, trial counsel was plainly aware that Juror 5 had fallen asleep while the prosecution made its case, *see, e.g.*, App., ECF No. 34-1 at 754; and that Juror 5 had not fallen asleep while he presented Mr. Roseboro's case. Mr. Roseboro also argues that

36

this could not have been a tactical decision because the second-chair defense counsel reported on Juror 5 twice. *See* Pet'r's Reply, ECF No. 43 at 19; *see also* App., ECF No. 34-1 at 754, 797. But despite these reports, defense counsel still asked the trial judge to postpone any action regarding Juror 5. *See* App., ECF No. 34-1 at 798. The timing of the reports and the request strongly suggest that trial counsel did not find it objectionable that Juror 5 fell asleep during the prosecution's case because the juror was awake during testimony about Mr. Roseboro's alibi defense. Moreover, it is not clear from the record that trial counsel should have raised an objection, as the caselaw suggests that this sort of unsupported objection is regularly and appropriately overruled. *See, e.g.*, *United States v. Freitag*, 230 F.3d 1019, 1023-24 (7th Cir. 2000).

The trial record does not contain sufficient evidence of juror misconduct, and trial counsel reasonably could have decided to not take further action regarding Juror 5. As such, an ineffective assistance of counsel claim is not "clearly stronger" than the claim Mr. Roseboro's counsel did raise. Because it was not unreasonable for Mr. Roseboro's appellate counsel to decline to make an ineffective assistance of counsel claim on appeal, Mr. Roseboro has not shown deficient performance under *Strickland*.

### 2.   The Court Need Not Decide Whether Appellate Counsel's Performance Was Prejudicial

Mr. Roseboro next argues that appellate counsel's performance prejudiced Mr. Roseboro. *See* Pet'r's Suppl. Br., ECF No. 34 at 14-20. Under *Strickland*, he must show that his appellate "counsel's ineffectiveness was prejudicial, *i.e.*, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Payne*, 760 F.3d at 13 (quoting *Strickland*, 466 U.S. at 687-88). However, because the Court has concluded that Mr. Roseboro has not shown deficient performance, it need not reach the question of whether his appellate counsel's performance was prejudicial.

Mr. Roseboro has not met his burden to show that his appellate counsel performed deficiently under *Strickland*. Therefore, under the highly deferential standard set forth in Section 2254(d), he has failed to show that the D.C. Court of Appeals' decision denying his motion to recall the mandate was an unreasonable application of clearly established federal law.

**D.    The Court Will Not Consider Mr. Roseboro's Declaration or Hold an Evidentiary Hearing**

Mr. Roseboro moves the Court to expand the record in this case to include a new declaration and to hold an evidentiary hearing. *See* Pet'r's Mot., ECF No. 33; *see also* Ex. A ("Roseboro Decl."), ECF No. 33-1. For the reasons below, the Court **DENIES** the motion.

Rule 7 of the Rules Governing Section 2254 Cases provides that "the judge may direct the parties to expand the record by submitting additional materials relating to the petition." Rules Governing Section 2254 Cases in the United States District Courts, R. 7. The Rule permits the parties to submit affidavits for consideration as part of the record, *id.*; including unsworn declarations, *see* 28 U.S.C. § 1746 (providing that an "unsworn declaration" may be submitted instead of an "affidavit"). Here, Mr. Roseboro seeks to submit an unsworn declaration describing juror misconduct at his third trial and additional information about his first two trials. *See* Pet'r's Mot., ECF No. 33 at 1. He argues that this declaration goes to "the heart of his ineffective-assistance-of-appellate counsel ('IAAC') claim." *Id.*

Rule 8 of the Rules Governing Section 2254 Cases provides that the judge may order an evidentiary hearing after "review[ing] the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7."

Rules Governing Section 2254 Cases in the United States District Courts, R. 8. Here, Mr. Roseboro seeks an evidentiary hearing to develop the factual basis of his IAAC claim. *See* Pet'r's Mot., ECF No. 33 at 2.

Mr. Roseboro argues that the Court must hold an evidentiary hearing because he did "all he could" to develop his IAAC claim in state court but did not receive an evidentiary hearing there. *Id.* However, because the Court has concluded that it may not grant Mr. Roseboro's petition, the Court **DENIES** Mr. Roseboro's Motion to Expand the Record and for an Evidentiary Hearing.

V.   **Conclusion**

For the foregoing reasons, the Court **DENIES** Mr. Roseboro's Petition, *see* ECF No. 3; and **DENIES** Mr. Roseboro's Motion to Expand the Record and for an Evidentiary Hearing, *see* ECF No. 33.[10]

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:   **Emmet G. Sullivan**
          **United States District Judge**
          **September 29, 2023**

---

[10] In view of the denial of the Petition based on the parties' supplemental briefing materials, the Motion to Dismiss, ECF No. 13, is found as moot.